**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Murphy Albert LEWIS,**
**Defendant-Appellee.**

No. 73–2694.

United States Court of Appeals,
Fifth Circuit.

Sept. 10, 1975.

---

Gerald Gallinghouse, U. S. Atty., Dennis Coleman Weber, Mary Williams Cazalas, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellant.

Clay J. Calhoun, Jr., Lynne C. Rothschild, John P. Nelson, Jr., New Orleans, La., for defendant-appellee.

Before GEWIN, GODBOLD and CLARK, Circuit Judges.

GEWIN, Circuit Judge:

On Petition for Writ of Certiorari, the Supreme Court has ordered[1] the judgment rendered by this court in *United States v. Lewis,* 492 F.2d 126 (5th Cir. 1974) vacated and the case remanded for further consideration in light of *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Having followed the directive of the Court, we reinstate the Government's appeal, 18 U.S. C.A. § 3731 (1970), and after examination of the issue presented, affirm the order of the district court dismissing the indictment of Murphy Albert Lewis.[2]

The operative facts are not in dispute. The history of this litigation is as follows: In July 1970 Lewis was ordered to report for induction into the Armed Forces of the United States on August 6, 1970. He sought to claim conscientious objector status and his order to report for induction was postponed by the local board pursuant to 32 C.F.R. Section 1632.2.[3] The board notified Lewis on

---

1. 421 U.S. 943, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1975).

2. In *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), the Supreme Court was confronted with a procedural issue similar to the one involved here, although in a different factual setting. The Court remanded the case to the Court of Appeals for consideration on the merits. We quote from that opinion:

> The jury entered a verdict of guilty against Wilson. The ruling in his favor on the Marion motion could be acted on by the Court of Appeals or indeed this Court without subjecting him to a second trial at the government's behest. If he prevails on appeal, the matter will become final, and the Government will not be permitted to bring a second prosecution against him for the same offense. If he loses, the case must go back to the District Court for disposition of his remaining motions. We therefore reverse the judgment and remand for the Court of Ap-

peals to consider the merits of the Government's appeal.

420 U.S. at p. 353, 95 S.Ct. at p. 1026, 43 L.Ed.2d at p. 247.

3. § 1632.2 Postponement of induction, general.
   (a) In case of death of a member of the registrant's immediate family, extreme emergency involving a member of the registrant's immediate family, serious illness of the registrant, or other emergency beyond the registrant's control, the local board may, after the Order to Report for Induction (SSS Form 252) has been issued, postpone until a date certain the time when such registrant shall report but such date shall not be later than 60 days from the date of such postponement. In case of imperative necessity, the local board may grant one further postponement to a date certain but such date shall not be later than 60 days from the date of such postponement.
   (b) The Director of Selective Service or any State Director of Selective Service (as to registrants registered within his State) may,

May 12, 1971 that in light of the decision in *Ehlert v. United States,* 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971) his claim to conscientious objector status could no longer be considered by it, and that he would, therefore, retain his 1A classification. The State Director of Selective Service notified the local board on May 19, 1971 that Lewis' postponement of induction was terminated and that he should be ordered to report in June 1971. The local board's June call had previously been filled, however, and no immediate call was forthcoming. In July 1971, the Selective Service Act of 1967 expired. In September 1971, the Draft Extension Act became law. Pursuant to his original July, 1970, induction order, Lewis was ordered to report in November, 1971. This order to report was issued approximately five months after the termination of Lewis' postponement of induction by the State Selective Service Director.[4] Lewis did not report and was indicted for violating 50 U.S.C.

App. § 462(a). He moved to dismiss the indictment on the ground that the five month delay between termination of postponement and notification to report violated the provisions of 32 C.F.R. § 1632.2 and voided his original July 1970 order to report. The district court agreed:

> Accordingly, since the induction order of July 13, 1970 was cancelled by the delay in ordering defendant to report for induction, it is the order of the court that the motion to dismiss the indictment, be, and the same is hereby, granted. App. p. 78.

The Government filed an appeal pursuant to 18 U.S.C. Section 3731, as amended by the Omnibus Crime Control and Safe Streets Act of 1970, 84 Stat. § 1890, which provides in part:

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an

for a good cause, at any time prior to the issuance of an Order to Report for Induction (SSS Form 252), postpone the issuance of such order until such time as he may deem advisable, or the Director of Selective Service or any State Director of Selective Service (as to registrants registered within his State) may, for good cause, at any time after the issuance of an Order to Report for Induction (SSS Form 252), postpone the induction of a registrant until such time as he may deem advisable.

(c) The local board shall postpone the induction of a registrant in accord with section 6(i)(1) or section 6(i)(2) of the Military Selective Service Act.

(d) The local board shall issue to each registrant whose induction is postponed a Postponement of Induction (SSS Form 264). A copy of such form shall be mailed to the State Director of Selective Service, and a copy filed in the registrant's Cover Sheet (SSS Form 101). The local board shall note the date of the granting of the postponement and the date of its expiration in the "Remarks" column of the Classification Record (SSS Form 102).

(e) A postponement authorized in paragraph (b) or (c) of this section in excess of 60 days or without limit may be terminated when the issuing authority so directs and upon not less than 30 days nor more than 60 days notice to the registrant. The registrant shall then report for induction at such time and

place as may be fixed by the local board. (f) No registrant whose induction has been postponed shall be inducted into the Armed Forces during the period of any such postponement. A postponement of induction shall not render invalid the Order to Report for Induction (SSS Form 252) which has been issued to the registrant but shall operate only to postpone the reporting date and the registrant shall report on the new date without having issued to him a new Order to Report for Induction (SSS Form 252).

4. In a brief filed in the district court the Government sets forth the following chronology:

> On May 12, 1971, the defendant was notified by his Selective Service Board that he was no longer eligible for consideration of his claim of conscientious objector under the ruling of Supreme Court case, *United States v. Ehlert,* 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971) and that an induction order would be issued. On July 1, 1971, the Selective Service Act of 1967 expired. On September 28, 1971, the Draft Extension Act became law. On October 12, 1971, the defendant was ordered to report on November 18, 1971, for induction pursuant to his original induction order dated July 13, 1970. The defendant failed to report for induction on November 18, 1971.
> App. pp. 14–15.

indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

\* \* \* \* \* \*

The provisions of this section shall be liberally construed to effectuate its purposes.

The 1970 amendments (effective in January 1971) to section 3731 were intended to facilitate governmental appeals by shifting judicial focus from the question whether "the decision setting aside or dismissing an indictment or information was 'based upon a defect in the indictment or information, or in the institution of the prosecution' "[5] to the inquiry whether the appeal is precluded by the United States Constitution.[6] The courts of appeal need no longer precisely define the nature of the action taken by the district courts in order to ascertain whether the government may appeal; rather any dismissal of an indictment or information by the district court is appealable so long as it is not precluded by the double jeopardy clause. The 1970 amendments to section 3731 served, then, to obviate the need to discuss the "kind of error section 3731 was intended to cover." *United States v. Findley,* 439 F.2d 970, 973 (1st Cir. 1971). See also, *United States v. Martin Linen Supply Co.,* 485 F.2d 1143, 1147 (5th Cir. 1973). In *Serfass v. United States,* the Supreme Court discusses the remaining constraint upon governmental appeals: the double jeopardy clause.[7]

Serfass, like Lewis, was indicted for failing to report for induction in violation of 50 U.S.C. App. § 462(a). The district court granted Serfass' pre-trial motion to dismiss the indictment because he established a prima facie claim for conscientious objector status which was not given full consideration by his local board. *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265, 269 (1975). The United States appealed and the Court of Appeals for the Third Circuit held that because Serfass had not waived his right to trial by jury and because no jury had been empaneled, jeopardy had not attached. The Supreme Court affirmed.

As an aid to the decision of cases in which the prohibition of the Double Jeopardy Clause has been invoked, the courts have found it useful to define a point in criminal proceedings at which the constitutional purposes and policies are implicated by resort to the concept of "attachment of jeopardy." In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn. In a nonjury trial, jeopardy attaches when the court begins to hear evidence. The Court has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is "put to trial before the trier of facts, whether the trier be a jury or a judge." (citations omitted) *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265, 274 (1975).

**5.** *Serfass v. United States,* 420 U.S. 377, 385, 95 S.Ct. 1055, 1061, 43 L.Ed.2d 265, 272 (1975).

The Court in *Serfass* also stated that:
Particular concern was expressed [by Congress] with respect to problems of appealability "in selective service cases where judges have reviewed defendants' selective service files before trials and dismissed the indictments after finding that there have been errors by the draft boards." Congress was of the view that "earlier versions of § 3731" had been subject to "restrictive judicial interpretations of congressional intent." (citations omitted) *Id.* 386, 95 S.Ct. 1061, 43 L.Ed.2d 273.

For a discussion of jurisdictional requirements under the predecessor to the present Criminal Appeals Act, 18 U.S.C. § 3731 (1970), see, e. g., *United States v. Sisson,* 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608, 618–24 (1970).

**6.** See *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975); *United States v. Kehoe,* 516 F.2d 78 (5th Cir. 1975).

**7.** For a general discussion of the development of the concept of double jeopardy see *United States v. Jenkins,* 490 F.2d 868 (2d Cir. 1973), *aff'd* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975).

Serfass conceded that technical jeopardy had not attached when the district court granted his motion to dismiss. He argued, however, that because the court's ruling was based on "evidentiary facts outside of the indictment, which facts would constitute a defense on the merits at trial,"[8] the ruling amounted to an acquittal on the merits and constituted the constructive attachment of jeopardy. *Id.* at 393, 95 S.Ct. at 1063, 43 L.Ed.2d at 275 (citation omitted). The Supreme Court held the characterization of an order to dismiss as an acquittal on the merits of no significance—absent the attachment of technical jeopardy and the risk of conviction. *Id.* 392, 95 S.Ct. 1055, 43 L.Ed.2d 276. See also, *United States v. Kehoe,* 516 F.2d 78 (5th Cir. 1975); *United States v. Mann,* 517 F.2d 259 (5th Cir. 1975) pp. 6991, 6998. In so doing, the Court noted that the opinions from which Serfass developed his argument were ones construing the Criminal Appeals Act prior to its 1970 amendment.[9] The approach in those cases was not in terms of double jeopardy but rather in terms of the kind of error addressed by section 3731. *Serfass v. United States,* 420 U.S. 377, 393, 95 S.Ct.

1055, 43 L.Ed.2d 265, 277 n. 15. Accordingly, the language of those decisions is not determinative in the context of *Serfass,* a case in which the issue is whether double jeopardy considerations preclude an appeal. See, *United States v. Martin Linen Supply Co.,* 485 F.2d 1143, 1147 (5th Cir. 1973); *United States v. Mann,* 517 F.2d 259 (5th Cir. 1975).

■ We are unable to distinguish *Lewis* from *Serfass.* Since Lewis has not waived his right to trial by jury, he has never been subject to the risk of conviction. The pre-trial hearing on Lewis' motion to dismiss could not have resulted in a guilty verdict. No jury was ever empaneled or sworn. If upon consideration of the merits of this appeal, we reversed the ruling of the district court, Lewis would be subjected to trial for the first time. The "constitutional protection against Government appeals attaches only where there is a danger of subjecting the defendant to a second trial for the same offense . .." *United States v. Wilson,* 420 U.S. 332, 336, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232, 237 (1975). We, therefore,

8. This argument is derived from cases including *United States v. Sisson,* 399 U.S. 265, 90 S.Ct. 2117, 2119, 26 L.Ed.2d 608, 613 (1970) in which the Court stated:

[W]e conclude that the decision below, depending as it does on facts developed at Sisson's trial, is not an arrest of judgment but instead is a directed acquittal. As such, it is not a decision that the Government can appeal.

Following *Sisson* and other cases which had elaborated upon it, the Second Circuit in *United States v. Velazquez,* 490 F.2d 29, 34 (2d Cir. 1973) stated in summary:

The present law of double jeopardy precludes retrial in instances when, regardless of the label, the trial court has ruled in favor of the defendant on facts going to the merits of the case if these facts were adduced at trial; if they were presented at an evidentiary hearing; or if they were stipulated by the parties. (citations omitted).

Our original opinion in *Lewis* was, like the overly broad statements in *Velazquez,* based upon misconceptions about the double jeopardy clause which have to some extent been clarified by *Serfass.* In *Serfass* the Court noted that:

It is, of course, settled that "a verdict of acquittal . . . is a bar to a subsequent prosecution for the same offense." But the language of cases in which we have held that there can be no appeal from, or further prosecution after, an "acquittal" *cannot be divorced from the procedural context* in which the action so characterized was taken. The word itself has no talismanic quality for purposes of the Double Jeopardy Clause. *In particular, it has no significance in this context unless jeopardy has once attached and an accused has been subjected to the risk of conviction. Id.* 420 U.S. 392, 95 S.Ct. 1064, 43 L.Ed.2d 276. (citation omitted) (emphasis added).

In other words, the argument propounded by both Serfass and Lewis is pertinent only after the question whether jeopardy has attached is answered affirmatively. See *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232, 237 (1975).

9. *United States v. Sisson,* 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1971); *United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972); *United States v. Findley,* 439 F.2d 970 (1st Cir. 1971).

reinstate the Government's appeal and turn to the merits of its argument.[10]

■ Lewis was indicted for refusing to report for induction in violation of 50 U.S.C. App. § 462(a). He contended in his motion to dismiss the indictment that the induction order was invalid as a matter of law because the specified reporting date was greater than 120 days after the State Selective Service Director instructed the local board to issue a letter ordering him to report on its June 1971 call. See 32 C.F.R. 1632.2(a).[11] In other words, Lewis contends his original July 1970 induction order was voided by the delay in excess of 120 days which transpired between the May 1971 termination of postponement for consideration of his claim to conscientious objector status and the October 1971 issuance of a letter ordering him to report. The Government, on the other hand, contends that Lewis was originally granted an indefinite postponement pursuant to 32 C.F.R. § 1632.2(b)—a valid delay chargeable to Lewis which continued unabated until October 1971 when the *local* board actually ordered him to report. The

Government does not agree that the actions of the State Director, reinstating Lewis' 1A classification and authorizing the local board to include him in the June call, had the effect of terminating the original delay and activating the 120 day limit of section 1632.2(a).[12] We agree with the district court that the communications of the State Director to the local board concluded the period of delay attributable to Lewis' claim to conscientious objector status and set in motion the 120 day limit applicable to the local board as prescribed by 32 C.F.R. 1632.2(a).

■ The only authority by which a local board may postpone the time for reporting pursuant to an outstanding order to report is 32 C.F.R. § 1632.2. *United States ex rel Iverson v. Rhodes,* 465 F.2d 402, 403 (7th Cir. 1972). The postponement may not exceed 120 days, *United States v. Kelly,* 469 F.2d 1310, 1313 (9th Cir. 1972), unless it is occasioned by the design of the registrant and accrues to his benefit.[13] *United States v. Scialabra,* 465 F.2d 1395, 1396 (9th Cir. 1972); *United States v.*

10. The merits of the case were briefed by both parties on appeal.

11. As indicated earlier, in *Serfass* the district court dismissed the indictment because it felt that the defendant had established a prima facie case for conscientious objector status and that the draft board failed to state sufficient reasons for the denial of his claim to such status. The *Serfass* decision deals chiefly with double jeopardy principles. In the case *sub judice* the issue on remand relates to the merits of the district court's ruling with respect to delay by the draft board in ordering the defendant to report for induction.

12. The Government argues that the original postponement to consider Lewis' conscientious objector claim was granted pursuant to 32 C.F.R. section 1632.2(b) and terminated pursuant to 32 C.F.R. section 1632.2(e). It contends that the 120 day delay limit specified in 1632.2(a) is not applicable to terminations effected under section 1632.2(e). Section 1632.-2(a) is applicable, argues the Government, only to postponements granted for extreme

family emergencies, or other emergencies beyond the registrant's control. Our disagreement with the Government "is consistent with several cases in which courts have enforced the requirements of section 1632.2 even though the local board did not purport to act under that regulation or the delay was not occasioned by the kind of 'extreme emergency' mentioned in the regulation." *United States ex rel Iverson v. Rhodes,* 465 F.2d 402, 404 (7th Cir. 1972) (citations omitted). We believe that such an approach is required by section 1632.2 particularly "[a]t a time when the President, Congress and the Director of Selective Service are all attempting to infuse the present draft law with as much certainty as possible . . .." *United States v. Stevens,* 438 F.2d 628, 629 (9th Cir. 1971). Presumably, even the Government would agree that excessive reporting delays resulting in unfairness are possible under section 1632.2(e). To prevent abuse and provide certainty we look to the limits explicitly prescribed by section 1632.2(a), for guidance in construing the entire regulation.

13. See 32 C.F.R. § 1632.2(b).

*Abrams,* 476 F.2d 1067, 1071 (7th Cir. 1973), *cert. denied,* 414 U.S. 1001, 94 S.Ct. 355, 38 L.Ed.2d 237; *United States v. Shea,* 508 F.2d 82, 86–7 (5th Cir. 1975). The deleterious effects that a reporting delay may have upon the personal, business, or scholastic plans of a registrant have led courts to construe strictly the provisions of 32 C.F.R. 1632.2. *United States ex rel Iverson v. Rhodes,* 465 F.2d 402, 404 (7th Cir. 1972); *United States v. Munsen,* 443 F.2d 1229, 1231 (9th Cir. 1971).

Admittedly the postponement of Lewis' induction was predicated initially upon his claim to conscientious objector status. Such a claim is lawful and may not be seized upon to justify additional delay attributable to administrative inertia. *United States v. Munsen,* 443 F.2d 1229, 1231 (9th Cir. 1971). Pre-induction deliberations regarding Lewis' status were concluded by the draft authorities in May 1971. At that time he was notified that he had been reclassified as 1A. The delay between May and October 1971 was in no way precipitated by Lewis. It was not his fault that the local board's June call had been filled before his availability was known or that the Selective Service Act expired in July 1971. The effect of the delay was to keep Lewis "guessing as to his ultimate fate beyond the time specified in the regulations." *United States v. Stevens,* 438 F.2d 628, 629 (9th Cir. 1971); *United States v. Munsen,* 443 F.2d 1229, 1231 (9th Cir. 1971). We conclude that in the circumstances disclosed by the undisputed facts of this case the delay violated the regulation limiting such delay to 120 days and that Lewis was not the cause of the violation.

The dismissal order and judgment of the district court are affirmed.