**Ex parte Johnathan Casey CRENSHAW.**

**No. 01–99–00540–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

July 20, 2000.

---

J. Gary Trichter, Brian W. Wice, Houston, for Appellant.

James Kuboviak, Bryan, for Appellee.

Panel consists of Justices COHEN, WILSON, and PRICE.*

## OPINION

DAVIE L. WILSON, Justice.

The State appeals from an order granting relief requested by appellee Jonathan Casey Crenshaw in a habeas corpus proceeding. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The State charged Crenshaw with driving a motor vehicle while intoxicated. *See* Act of May 29, 1993, 73d Leg, R.S., ch. 900, sec. 1.01, §§ 49.01, .04, 1993 Tex. Gen. Laws 3586, 3696–97 (former TEX. PENAL CODE §§ 49.01, .04, since amended). The

---

* The Honorable Frank C. Price, Jr., former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

complaint and information alleged in a single paragraph that "on or about October 13, 1994" Crenshaw did "drive and operate a motor vehicle in a public place while ... intoxicated by not having the normal use of his mental and physical faculties by reason of the introduction of alcohol into his body and by having an alcohol concentration of 0.10 or more."

Crenshaw filed a motion to suppress the results of his blood test on the grounds that he did not voluntarily consent to the test and he did not receive the proper warnings before taking the blood test. At the evidentiary hearing, Robert Allen Wilson, the officer who arrested Crenshaw, testified he did not recall whether he handed Crenshaw a copy of the statutory warning form prior to obtaining Crenshaw's consent to take the test. Wilson stated he would have read the warning to Crenshaw before he gave his consent. Wilson testified he did not force Crenshaw to take the blood test or tell him he would go to jail if he did not take the test. Wilson did not recall whether Crenshaw asked for an attorney after Wilson read the warning.

Crenshaw testified that his initial reaction to the discussion about the chemical test was that he needed an attorney. According to Crenshaw, Wilson's response was that Crenshaw did not need an attorney for that part. Crenshaw stated he decided to take the test because he was scared and because he had never before been arrested. Wilson told Crenshaw he would be taken directly to jail if he did not take the test. Crenshaw also testified he did not remember Wilson reading anything like the statutory warning until after he agreed to take the test. Crenshaw did remember that when he agreed to take the test, Wilson handed him something and

they went over it. The court denied Crenshaw's motion.

The case proceeded to trial before a jury. After the defense rested and the State closed, the court indicated there had been an off-the-record discussion regarding the statute governing chemical tests for intoxication and implied consent and that the court had reviewed the testimony at the pretrial suppression hearing. The court found that "the evidence was insufficient to prove beyond a reasonable doubt that the officer gave written warnings to the defendant ... prior to the officer requesting the defendant to take a [blood] test." The defense then requested the court to suppress the blood test results, and the court did so.[1] The defense next moved for a directed verdict on "the point 10 theory of DWI ... since there is no further evidence of that." The court granted the motion. Finally, the defense moved for a mistrial on the ground that the jury had already heard the results of the blood test and it would be too much to ask the jury to disregard the evidence. The State objected on the grounds that the motion was untimely and that there were still two valid theories of intoxication before the jury.[2] The trial court granted the motion for mistrial on the basis of manifest necessity.

Having learned that the State intended to retry him on the 0.10 theory of intoxication, Crenshaw filed an application for writ of habeas corpus requesting a hearing for the State to show cause why it should not be barred from reprosecuting under this theory. In the application, Crenshaw argued he was entitled to relief under the federal and state prohibitions against double jeopardy and under the doctrine of collateral estoppel. He also argued that

1. The State objected, citing authority in support of its position that proof that written warnings were delivered to the accused before the test was not a predicate to admissibility of a voluntarily taken test.

2. Although the State referred to the jury's having been informed it had "three different

ways they could find intoxication," with two remaining valid after the directed verdict, the record does not indicate that the case reached the point at which the jury was charged. The unsigned charge in the record refers to impairment of physical or mental faculties and 0.10 blood alcohol concentration.

the State was precluded from introducing any evidence regarding the blood test results or that he "was even offered such a test."

The court, with a new judge presiding, implicitly granted the writ and held a hearing on the application.[3] Crenshaw argued that granting the directed verdict constituted a termination of that "count" on the merits and that the doctrines of double jeopardy and collateral estoppel precluded relitigation of the 0.10 theory. The State argued that there was no double jeopardy bar to retrial of the 0.10 theory because a mistrial granted at a defendant's request does not terminate the original jeopardy. The State also contended that the grant of the mistrial put the case back to its pretrial status and "undid" the motion to suppress. The trial court orally granted Crenshaw's requested relief, precluding the State from retrying on the 0.10 theory and from introducing the blood test evidence and evidence that Crenshaw was offered any chemical test.

The State filed its notice of appeal on April 30, 1999. Because the record originally before this Court did not contain a written order reflecting the oral grant of relief, this Court abated the case to allow the trial court to sign a written order reflecting its oral decision. The trial court signed its written order granting the requested relief on April 6, 2000.

## DISCUSSION

The State raises two issues on appeal: whether the State may appeal an order sustaining a claim of double jeopar-

dy and whether the trial court erred in granting Crenshaw's requested "double jeopardy relief." [4] Before addressing the State's argument, we address a jurisdictional issue.[5]

### *Jurisdiction*

By motion filed the day of submission, Crenshaw contends this Court lacks jurisdiction to hear the State's appeal because the State did not file its notice of appeal within 15 days after the day the trial court signed the written order granting relief. *See* TEX.CODE CRIM. P. ANN. art. 44.01(d) (Vernon Supp.2000). The State filed its notice of appeal over 11 months before the court signed the written order granting Crenshaw's requested relief.

Texas Rule of Appellate Procedure 27.1(b) provides:

> In a criminal case, a prematurely filed notice of appeal is effective and deemed filed on the same day, but after, sentence is imposed or suspended in open court, or the appealable order is signed by the trial court. But a notice of appeal is not effective if filed before the trial court makes a finding of guilt or receives a jury verdict.

Crenshaw, however, argues that Rule 27.1(b) does not apply to appeals by the State because the State's right to appeal is separately governed by Code of Criminal Procedure article 44.01. Crenshaw, however, cites no authority limiting Rule 27.1(b) to appeals by a criminal defendant, and we are aware of none.

3. *See LeBlanc v. State*, 826 S.W.2d 640, 643–44 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd) (explaining difference between issuing a writ and granting the requested relief). There is no written document in the record indicating that the writ issued.

4. Apart from the jurisdictional issue discussed below, Crenshaw does not dispute the State's right to appeal in the present case. The respondent in a habeas corpus proceeding may appeal from an adverse ruling when the State would otherwise have had the right of appeal

in a criminal case. *State v. Kanapa*, 778 S.W.2d 592, 593 (Tex.App.—Houston [1st Dist.] 1989, no pet.) (per curiam). The State has the right to appeal an order that sustains a claim of former jeopardy. TEX. CODE CRIM. P. ANN. art. 44.01(a)(4) (Vernon Supp.2000).

5. In its issues presented and argument, the State does not refer to the trial court's having granted Crenshaw's request to exclude the blood test evidence at the second trial. We decline to address that issue.

■ Crenshaw also suggests that this Court's order abating the appeal to permit entry of a written order somehow nullified the State's original notice of appeal. Again he cites no law in support of this proposition, and we are aware of none.

We hold that this Court has jurisdiction over the appeal. Accordingly, we deny Crenshaw's motion to dismiss for want of jurisdiction.

### Bar on Retrial

#### Standard of review

■ In its second issue, the State contends the trial court "erred in granting the double jeopardy relief" because the "directed verdict" granted by the first trial court "was not an 'acquittal.'" Thus, this case presents a purely legal question: whether the "directed verdict" on the 0.10 theory constituted an "acquittal" such as would bar retrial on that theory under either double jeopardy or collateral estoppel. We apply a de novo standard of review to questions of law. *State v. Salinas*, 982 S.W.2d 9, 10–11 (Tex.App.— Houston [1st Dist.] 1997, pet. ref'd).

#### Implications of the trial court's ruling on the 0.10 means of committing DWI

■ **One offense or two?** The resolution of this case turns in part on whether the information alleged two separate offenses or simply two means of committing the same offense. The State argues that the trial court's "directed verdict" on the

0.10 theory did not constitute an "acquittal" of the DWI offense because 0.10 blood alcohol content constitutes only one means or mode of committing the DWI. The State then asserts that Crenshaw's election of a mistrial returned the case to its pretrial posture.

Crenshaw argues that the information alleged two separate and distinct DWI offenses and that the "directed verdict" on the 0.10 theory constituted acquittal of that "offense." He does not contest the State's ability to retry him on the loss-of-faculties theory.

Crenshaw relies on *State v. Carter*, 810 S.W.2d 197 (Tex.Crim.App.1991). In *Carter*, the court of criminal appeals held, "[I]n the face of a timely motion to quash, a charging instrument alleging driving while intoxicated must allege (1) which definition(s) of "intoxicated" (Article 6701*l*–1(a)(2)(A) and/or (B)) the State will rely on at trial and (2) which type(s) of intoxicant (those listed in Article 6701*l*–1(a)(2)(A)) the defendant supposedly used." *Id.* at 200. In the course of its reasoning, the court stated that, under what was then Revised Statutes article 6701*l*–1, "there are really two types of DWI offenses." *Carter*, 810 S.W.2d at 200.[6] The court then referred to the "'loss of faculties' offense" and to the *"per se* offense." *Id.* Finally, the court referred to the "different behaviors necessary to commit the two offenses." *Id.*

*Carter*, however, also cited cases concerning what the State had to allege when

6. At the time of the *Carter* decision, the statute provided in relevant part:
   "Intoxicated" means:
   (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, or a combination of two or more of those substances into the body; or
   (B) having an alcohol concentration of 0.10 or more.
   Act of May 17, 1985, 69th Leg, R.S., ch. 462, § 18, 1985 Tex. Gen. Laws 1630 (former Tex. Rev.Civ. Stat. art. 6701*l*–1(a)(2), since amended and repealed).
   The parallel provision in effect at the time of Crenshaw's offense provided:

   "Intoxicated" means:
   (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or
   (B) having an alcohol concentration of 0.10 or more.
   Act of May 29, 1993, 73d Leg, R.S., ch. 900, sec. 1.01, § 49.01(2), 1993 Tex. Gen. Laws 3586, 3696 (former Tex. Penal Code § 49.01(2), since amended).

it charged under a statute containing a definition that provided "for more than one manner or means" of committing the prohibited act or omission. *Id.* at 199–200. These cited cases included *State v. Winskey,* 790 S.W.2d 641 (Tex.Crim.App.1990), *Solis v. State,* 787 S.W.2d 388 (Tex.Crim. App.1990), *Garcia v. State,* 747 S.W.2d 379 (Tex.Crim.App.1988), and *Ferguson v. State,* 622 S.W.2d 846 (Tex.Crim.App. [Panel Op.] 1981). None of these cases treats the alternate definitions of "intoxicated" as creating separate and distinct offenses.

At least two courts of appeals have declined to read *Carter* as holding that the definition of intoxicated in the DWI statute sets forth separate offenses. In *Harris v. State,* the San Antonio Court of Appeals rejected a defendant's claim that, under *Carter,* the State's amendment of a DWI complaint constituted charging him with a different or additional offense. 866 S.W.2d 316, 324 (Tex.App.—San Antonio 1993, pet. ref'd). The court observed, "Despite some of the language in *Carter,* the 'amendment' here simply dealt with different means or modes of committing the same offense— driving while intoxicated. We do not interpret *Carter* to hold otherwise." *Id.* The Dallas Court of Appeals followed *Harris* in the context of rejecting a defendant's complaint that the State had impermissibly charged two offenses in the same paragraph when it alleged both loss of mental and physical faculties and an alcohol concentration of at least 0.10 in the same paragraph. *Kilgo v. State,* 880 S.W.2d 828, 829 (Tex.App.—Dallas 1994, pet. ref'd).

We agree with the San Antonio and Dallas Courts of Appeals. The definition

of "intoxicated" in the DWI statute sets forth alternate means of committing one offense. It does not set forth separate and distinct offenses.

## No "directed verdict" on a theory of liability

■ Neither party cites any authority to support a trial court's granting a "directed verdict" on only one theory of liability. We are aware of none. We construe what the trial court did in the present case as simply taking the 0.10 theory from the jury. When the trial court ruled against the State on the 0.10 theory, it did not "acquit" Crenshaw of the DWI offense.

■ Following Crenshaw's successful motion for a mistrial and absent any misconduct on the part of the government, the State may retry him for the DWI offense. *See Bauder v. State,* 921 S.W.2d 696, 698 (Tex.Crim.App.1996); *see also United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). Crenshaw does not argue otherwise.[7]

## Bar to retrial on the 0.10 theory

■■ It does not, however, follow that, on retrial, the State may again proceed under the 0.10 theory. As the Supreme Court explained in *Green v. United States,* the "underlying idea" of the prohibition against double jeopardy

is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the pos-

---

7. Thus, granting Crenshaw's requested relief arguably would not result in immediate release. Ordinarily, habeas corpus is not appropriate in such a situation. *See Headrick v. State,* 988 S.W.2d 226, 228 (Tex.Crim.App. 1999). Nevertheless, if reprosecution under the 0.10 theory is barred by double jeopardy, Crenshaw has a valid challenge to being held under the present information, which alleges

both theories. *See Konchar v. State,* 938 S.W.2d 500, 502 (Tex.App.—Tyler 1996, no pet.) (when defendant initially tried on indictment charging attempted murder, but was convicted of lesser offense, retrial on same indictment violated defendant's double jeopardy rights even though State abandoned greater charge on retrial).

sibility that even though innocent he may be found guilty.

355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); *see also Ex parte Granger,* 850 S.W.2d 513, 517–18 (Tex. Crim.App.1993) (discussing policies embodied in Double Jeopardy Clause).[8]

Although the present case is one of first impression, application of the double jeopardy bar in two related situations is instructive: (1) retrial of a defendant after his successful appeal from a trial at which the jury found him guilty of a lesser included offense of the charged offense and (2) retrial occasioned by mistrial after a finding of guilt on the lesser included offense. In such situations, the State cannot again try the greater offense. *See Price v. Georgia,* 398 U.S. 323, 326–27, 90 S.Ct. 1757, 1759–60, 26 L.Ed.2d 300 (1970) (retrial after appeal); *Green,* 355 U.S. at 185–86, 198, 78 S.Ct. at 222–23, 229 (1957) (same); *Turner v. State,* 518 S.W.2d 243, 244 (Tex.Crim.App.1975) (retrial on guilt after mistrial because jury deadlocked on issue of punishment); *Monroe v. State,* 871 S.W.2d 801, 804 (Tex.App.—Houston [14th Dist.] 1994, no pet.) (retrial after finding of guilt on lesser offense followed by mistrial due to bailiff's misconduct). Statutory law provides the same protection. *See* TEX. CODE CRIM. P. ANN. art. 37.14 (Vernon 1981).

The rationale underlying these cases is that, in finding the defendant guilty of the lesser charge, the jury impliedly acquitted him of the greater. *See Price,* 398 U.S. at 329, 90 S.Ct. at 1761; *Monroe,* 871 S.W.2d at 804. Retrying the defendant on the greater charge would do precisely what the Double Jeopardy Clause prohibits: allow the State "to make repeated attempts to convict an individual for an alleged offense." *Green,* 355 U.S. at 187, 78 S.Ct. at 223.

8. Except in cases where the prosecutor causes a mistrial, the Texas Constitution provides no greater double jeopardy protection than the United States Constitution. *See Bauder v. State,* 921 S.W.2d 696, 698–99 (Tex.

For purposes of double jeopardy analysis, we view what happened in this case as conceptually similar to an acquittal on a greater offense. The State cannot again try Crenshaw for an October 13, 1994 DWI offense that encompasses **both** the 0.10 alcohol concentration theory **and** the loss-of-mental-and-physical-faculties theory. It can retry him only on an offense that encompasses the latter theory alone. To hold otherwise would allow the State to make repeated attempts to convict Crenshaw by relying, at least in part, on the 0.10 theory.

We overrule the State's second issue.

### CONCLUSION

The order of the trial court is affirmed. We remand this case to the trial court for proceedings consistent with this opinion.

Crim.App.1996) (discussing mistrials caused by prosecutor's actions); *Stephens v. State,* 806 S.W.2d 812, 815 (Tex.Crim.App.1990) (stating that federal and state double jeopardy provisions are conceptually identical).