In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00017-CR
______________________________


JAMES DAVID AINSWORTH, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the County Court at Law
Fort Bend County, Texas
Trial Court No. 104551


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            Trooper Robin Frazier observed the vehicle driven by James David Ainsworth going 82 miles
per hour in a 65-mile-per-hour zone. In the process of stopping Ainsworth's vehicle, Frazier became
suspicious when Ainsworth took slightly longer to pull over than would someone in a normal traffic
stop. Frazier had to activate his siren as well as his overhead lights. After Ainsworth stopped,
Frazier smelled alcohol on Ainsworth's breath. Ainsworth first admitted he had had "a few" drinks,
then admitted having consumed a six-pack of beer on this occasion.


 He had glassy, bloodshot eyes. 
After administering field sobriety tests to Ainsworth, Frazier placed him under arrest for driving
while intoxicated (DWI).


 At the police station, Ainsworth provided a specimen of his breath; the
results registered blood alcohol content (BAC) readings of .148 and .145.
            Ainsworth raises nine points on appeal. We affirm the trial court's judgment based on the
following holdings:
(1)       It was not error to admit evidence of Ainsworth's performance on the one-leg-stand test.
(2)       It was not error to admit evidence of the breath test.
(3)       A jury instruction on the legality of Ainsworth's arrest was not required.
(4)       Failure to instruct the jury to disregard the horizontal gaze nystagmus (HGN) test was not
error.
(5)       Refusal to instruct the jury on the voluntariness of the breath test was not error.
(6)       It was not error to deny the requested jury charge on the manner in which the breath test was
administered.
(7)       Ainsworth was not entitled to a separate verdict form on each alternative definition of
intoxication.
(8)       Sufficient evidence supports the conviction based on loss of normal faculties.
(9)       Sufficient evidence supports the conviction based on excess BAC.
We address each in turn.
(1)       It Was Not Error to Admit Evidence of Ainsworth's Performance on the One-Leg-Stand Test

            Ainsworth claims the trial court erred in admitting evidence of the one-leg-stand field
sobriety test Frazier administered to Ainsworth. We review the trial court's decision to admit or
exclude evidence under an abuse of discretion standard. See Green v. State, 934 S.W.2d 92, 101–02
(Tex. Crim. App. 1996); Montgomery v. State, 810 S.W.2d 372, 379–80 (Tex. Crim. App. 1990). 
We will not reverse a trial court's ruling that was within the "zone of reasonable disagreement." 
Green, 934 S.W.2d at 102.
            Ainsworth's appellate complaint is centered on his assertion that Frazier did not administer
the one-leg-stand test using the procedure set out in the Texas Department of Public Safety (DPS)
training manual. Ainsworth claims this deviation from the prescribed testing method should have
precluded admission of any evidence of the field sobriety test. We disagree.
            While Frazier testified he administered to Ainsworth a "completely different"


 test from the
one in the manual, we note that the differences were insignificant and that, therefore, the decision



to admit the test into evidence was within the trial court's discretion.
            Frazier, a thirty-year veteran trooper, stated he had been a DPS trooper administering field
sobriety tests since before the publication of the current manual and its testing methods. Frazier said 
he uses his form of the one-leg-stand test because he feels more comfortable with it, having been
trained in it and having used it for many years. He believes that the test he administered to
Ainsworth is "an excellent divided attention test" and is "real good to show if a person's impaired
or not." 
            The DPS manual glossary defines the one-leg-stand test as a "divided attention field sobriety
test." Frazier testified that it is important to use a "divided attention" test such as the one-leg-stand
test because vehicle drivers must do more than one thing at a time, and therefore must be in
command of their mental and physical faculties when driving. "The one-leg-stand is grounded in
the common knowledge that excessive alcohol consumption can cause problems with coordination,
balance, and mental agility, and its sole purpose is to reveal clues or symptoms of impairment." 
McRae v. State, 152 S.W.3d 739, 746 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (citations
omitted).
            The videotape of Frazier's traffic stop of Ainsworth, introduced by the State, shows Frazier's
initial interview with Ainsworth on the roadside, Frazier's administration of an HGN test


 and a one-leg-stand test, and Ainsworth's recitation of the alphabet. The videotape shows Frazier instructing
Ainsworth to keep his hands at his sides, to lift one leg about six inches from the ground, and to
count backward from thirty to zero, switching legs when he reached the count of fifteen. Although
Frazier did not tell Ainsworth to keep his heels together, Frazier demonstrated the test in that
manner, and Ainsworth kept his feet together while performing the test.



            The DPS manual in evidence instructs officers to tell subjects to stand, with their arms at
their sides and their heels together, raise one foot six inches off the ground, and count for thirty
seconds. The officer is to demonstrate the instructions and ask the subject if he or she understands. 
Here, Ainsworth was obliged only to balance on each foot for a count of fifteen, which should have
made the test easier to accomplish. See Compton v. State, 120 S.W.3d 375 (Tex. App.—Texarkana
2003, pet. ref'd) (defendant not instructed to refrain from using arms for balance, omission made test
easier to perform).
            After reviewing the test Frazier administered to Ainsworth, and comparing that test with the
method described in his training manual, we find no significant difference between the two. The test
used by Frazier in this case is different only in the way the subject counts and the changing of the
raised foot.
            The method used by Frazier effectively tested Ainsworth's balance and ability to listen to and
follow instructions. While slight variations from the manual's procedures, such as the one
encountered here, could affect the evidentiary weight to be given the test results, "[i]t would be
unreasonable to conclude that any variation in administering the tests, no matter how slight, could
automatically undermine the admissibility of an individual's poor performance of the tests." 
Compton, 120 S.W.3d at 378.
            Admission of this evidence was not an abuse of discretion on the trial court's part.


 We
overrule this point of error.
(2)       It Was Not Error to Admit Evidence of the Breath Test

            Ainsworth also contends the trial court erred in admitting the evidence of Ainsworth's breath
test. Ainsworth asserts the prejudicial impact of this evidence outweighed its probative value; the
State had no significant need for the evidence; the breath test results created an irrational impression
that Ainsworth either had lost the normal use of his mental or physical faculties or had a BAC of .08
or higher at the time he was driving; and that, lacking competent retrograde extrapolation evidence,
the test results were inadmissible.
            Frazier conducted the traffic stop on Ainsworth about 11:10 p.m. the night of April 11, 2003. 
According  to  the  Intoxilyzer  printout,  Ainsworth  provided  breath  samples  at  12:30  a.m.  and
12:32 a.m., April 12, 2003.
            The Texas Court of Criminal Appeals addressed an analagous situation in State v. Mechler.


 
There, the trial court excluded the State's breath test evidence when the expert (Alva Barbosa, the
same expert who testified in this case) was unable to provide retrograde extrapolation evidence and 
testify to Mechler's BAC at the time Mechler was driving. Mechler provided a breath specimen of
.165 BAC an hour and a half after his traffic stop. Mechler, 153 S.W.3d at 437. The Mechler court
held that the proper standard of review was abuse of discretion (as opposed to the de novo review
conducted by the intermediate appellate court). After reviewing the record under the principles of
Montgomery, the Texas Court of Criminal Appeals found that Mechler's breath test results should
have been admitted at trial. Id. at 442.
            In its Montgomery analysis, the court in Mechler focused on four aspects of the contested
evidence: the probative value of such evidence, the tendency for the evidence to "impress the jury
in some irrational yet indelible way," the time needed to develop the evidence, and the State's need
for the evidence. Id. at 440.
            Here, evidence that Ainsworth had a BAC of .148 and .145 approximately eighty minutes
after being stopped by the trooper is clearly probative of the ultimate issue at trial, namely, whether
Ainsworth operated a motor vehicle in a public place while intoxicated. Regarding the potential for
the breath test evidence to "impress the jury in some irrational yet indelible way," we agree with the
analysis of the Texas Court of Criminal Appeals in Mechler: the breath test results were obviously
prejudicial to Ainsworth. But because this evidence relates directly to the charged offense, it was
not unfairly prejudicial. See id. at 440–41.
            Further, the amount of time spent on the breath test evidence was not unduly lengthy or
belabored. In this two-day misdemeanor trial, Frazier testified the first day, and one full volume of
the reporter's record—119 pages—is consumed with his testimony. The second day's volume of
testimony contains seventeen pages of Frazier's testimony. Barbosa's testimony is contained in
ninety-six pages. Frazier was then recalled for five pages of testimony. This is not an unreasonable
amount of time for Barbosa's testimony, especially since the substance of the evidence, the breath
test results, are directly relevant to the charged offense. See id. at 441.
            We next consider the State's need for the breath test evidence. On the videotape, Ainsworth
appears fairly steady on his feet and does not slur his words. The trial court removed evidence of
the HGN test from the jury's consideration. Ainsworth clearly says, though, that he had consumed
a six-pack of beer, admitting it was probably too much for a man his size.


 At the police station,
Frazier posed the following question to Ainsworth: on a scale of zero to ten, with zero being
completely sober, one being a slight loss of mental and physical faculties, and ten being falling down
drunk, where would Ainsworth rate himself at the time of the traffic stop. Ainsworth said he placed
himself at three at the time of his stop and two at the police station. In the squad car, Ainsworth can
be seen shaking his head and can be heard saying that he was "in the wrong no doubt about it." The
State's information alleged both loss of normal use and "per se" intoxication by way of a BAC of at
least .08. The State had a fairly significant need for the breath test evidence. The other evidence,
relevant to loss of normal use of mental or physical faculties, was not overwhelming. We find the
sum of these factors all weigh in favor of admission of the breath test evidence. Accordingly, the
trial court did not abuse its discretion in admitting this evidence. This point of error is overruled.
(3)       A Jury Instruction on the Legality of Ainsworth's Arrest Was Not Required
            In the charge conference, Ainsworth asked the trial court to include an instruction authorizing
the jury to decide whether Frazier had probable cause to arrest Ainsworth. Ainsworth claims that,
because Frazier allegedly did not administer the field sobriety tests in accordance with the DPS
manual's instructions, he illegally arrested Ainsworth.
            If there is a factual issue on how evidence was obtained, a trial court is required to charge the
jury regarding the legality of how evidence was obtained.


 Balentine v. State, 71 S.W.3d 763, 773
(Tex. Crim. App. 2002). If a defendant successfully raises factual disputes over whether evidence
was illegally obtained, inclusion of a properly worded Article 38.23 instruction is mandatory. Bell
v. State, 938 S.W.2d 35, 48 (Tex. Crim. App. 1996); Hanks v. State, 104 S.W.3d 695, 700 (Tex.
App.—El Paso 2003), aff'd, 137 S.W.3d 668 (Tex. Crim. App. 2004). Whether a defendant is
entitled to an Article 38.23 instruction depends on whether there is a disputed fact issue regarding
the evidence in contention. Patterson v. State, 847 S.W.2d 349, 353 (Tex. App.—El Paso 1993, pet.
ref'd); Poulos v. State, 799 S.W.2d 769, 772 (Tex. App.—Houston [1st Dist.] 1990, no pet.). "A trial
court is required to include a properly worded Article 38.23 instruction in the jury charge only if
there is a factual dispute as to how the evidence was obtained." Poulos, 799 S.W.2d at 772 (quoting
Thomas v. State, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986)); see also Andujo v. State, 755
S.W.2d 138, 142–43 (Tex. Crim. App. 1988).
            At the time Frazier arrested Ainsworth, Frazier had the following information: Ainsworth
smelled of alcohol; Ainsworth admitted that he had consumed a six-pack of beer and that he weighed
about 140 pounds; Ainsworth had been speeding and, in Frazier's estimation, took longer to pull over
than was normal. As has been discussed, Frazier administered a one-leg-stand test that varied
slightly from the prescribed method; and Frazier also administered an HGN test, the results of which
were later removed from the jury's consideration. Ainsworth offered no conflicting evidence, and
therefore there were no disputed facts about the trooper's probable cause to arrest. The trial court
was required to apply the law to these undisputed facts and render a legal conclusion about the
trooper's probable cause to arrest. With no facts in dispute, the trial court did not err in refusing to
include an Article 38.23 instruction in the jury charge. Cf. McRae v. State, 152 S.W.3d 739, 748
(Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (though officer admitted incorrectly performing
field sobriety tests and made inconsistent statements; where his was only testimony about reason for
McRae's arrest, McRae's appellate argument "mistakes an irrelevant factual dispute for a material
legal dispute"; Article 38.23 instruction not warranted). Ainsworth was not entitled to an Article
38.23 instruction.
 
(4)       Failure to Instruct the Jury to Disregard the HGN Test Was Not Error

            Ainsworth claims the trial court erred in not including in the jury charge an instruction to
disregard evidence of the HGN test administered by Frazier. Frazier testified regarding how he
administered the test, and the jury was allowed to see him administer the test to Ainsworth on the
videotape of the traffic stop. At the beginning of the second day of testimony, the trial court
instructed the jury to disregard evidence about the HGN test. Ainsworth claims the trial court's
instruction did not "adequately instruct the jury not to consider the HGN test evidence," but does not
elaborate. An instruction to disregard normally cures error, except in extreme cases where it appears
that the evidence is clearly calculated to inflame the minds of the jury and is of such a character as
to suggest the impossibility of withdrawing the impression produced on the jurors' minds. 
Livingston v. State, 739 S.W.2d 311 (Tex. Crim. App. 1987); Carter v. State, 614 S.W.2d 821 (Tex.
Crim. App. 1981).
            The topic of the HGN evidence did not return during the course of the trial, and the State did
not mention it in closing arguments. There being no evidence that the trial court's instruction was
insufficient, or that evidence of the HGN test was "calculated to inflame the minds of the jury," we
overrule this point.
(5)       Refusal to Instruct the Jury on the Voluntariness of the Breath Test Was Not Error

            Ainsworth contends the trial court erred in failing to include in the jury charge an instruction
on whether Ainsworth voluntarily consented to giving a specimen of his breath. Generally, a
defendant is entitled to a jury instruction on any properly requested defensive issue raised by the
evidence. Lavern v. State, 48 S.W.3d 356, 360 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).
This right exists regardless of the source of the evidence, its strength, or whether the trial court finds
it credible. Hamel v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996).
            Ainsworth testified at the suppression hearing that Frazier told him Frazier would give
Ainsworth an "opportunity to take a breath test." While Frazier testified that he read Ainsworth the
necessary statutory warnings from the appropriate form, and gave Ainsworth a copy of the same,
Ainsworth denied ever seeing or receiving the form. The trial court denied Ainsworth's suppression
motion. Ainsworth did not testify at trial before the jury.
            In the case at bar, there was no evidence contradicting Frazier's testimony that Frazier read
the statutory warnings to Ainsworth and gave Ainsworth a copy of the form containing the warnings. 
We find guidance in the Texas Court of Criminal Appeals' opinion in Thomas. There, Thomas asked
the trial court for a jury instruction to resolve a fact issue concerning Thomas' refusal to submit a
sample of his breath. Because there was no "factual dispute" about Thomas' refusal to give a breath
sample, no instruction from the trial court was necessary. Thomas, 723 S.W.2d at 707. Likewise,
here, no such instruction was necessary.
(6)       It Was Not Error to Deny Requested Jury Charge on Manner in Which the Breath Test Was
Administered
            Ainsworth complains the trial court erred in refusing Ainsworth's requested instruction to the
jury regarding the credibility to be accorded the Intoxilyzer breath test device, which yielded a report
showing Ainsworth had a BAC of .148 and .145, approximately eighty minutes after the traffic stop. 
The charge to the jury read, in pertinent part:
The State has introduced evidence of an analysis of the Defendant's breath by use of
an Intoxilyzer 5000. You are instructed that you are the sole judges of whether you
accept such evidence. Before you may consider the results and interpretations of
such analysis, you must find beyond a reasonable doubt that the breath testing
instrument and equipment used, (1) had the approval of and was certified by the
scientific director for the alcohol testing program of the Texas Department of Public
Safety, and (2) that the breath testing techniques and methods used had the approval
of the scientific director and were followed by the breath testing instrument operator.
 
The breath testing instrument operator, who testified and administered the breath test
with approved and certified equipment and utilized approved techniques and
methods, if you have so found, must be found beyond a reasonable doubt to have
possessed the proper certification as a breath test operator under the standards as set
forth by the scientific director. 
 
You must also find beyond a reasonable doubt that the technical supervisor who
testified possessed the necessary qualifications by education and training in the
proper scientific fields (1) to calibrate the breath testing instrument, (2) to express an
opinion concerning the interpretation of the analysis of the breath sample, (3) to
compound the various chemicals to the proper percentages for use in the breath
testing instrument, and (4) to periodically supervise maintenance of the breath testing
instrument. Further, that the said technical supervisor possessed the proper
certification as a technical supervisor under the standards as set forth by the scientific
director for the breath testing program of the Texas Department of Public Safety.

Ainsworth filed a written request, asking the charge instruct the jury that "accuracy, reliability and
credibility of the Intoxilyzer test . . . are to be judged by you the same as you would the testimony
of any other witness." The proposed instruction also advised the jury it was not in any way to
consider the fact that the Intoxilyzer device had been purchased and used by the State. Ainsworth's
appeal also complains he was denied a jury instruction on whether the test administrator properly
observed Ainsworth for fifteen minutes before administering the breath test.
            Ainsworth does not explain how his proposed charges were required, nor how the charge
issued by the trial court was deficient. The charge to the jury required the jury to find that the test
results from the Intoxilyzer were obtained by a qualified operator, using the device per its proper
methodology, and that the device was functioning properly. Barbosa, the technical supervisor,
testified how the Intoxilyzer works and explained her job duties in maintaining the device on which
Ainsworth's breath samples were taken. Any discrepancy in the way the device was to be used and
the way it was used, to the extent any discrepancy existed, would go to the weight to be accorded the
test results, not their admissibility. See Slagle v. State, 570 S.W.2d 916, 919 (Tex. Crim. App. 1978)
(evidence of variables that may affect breath test results go "to the weight to be accorded to the
breathalyzer results").

            Hearing no specific argument or authority from Ainsworth on this subject, see Tex. R. App.
P. 38.1, and finding no error on the face of the record, we overrule this point of error.
(7)       Ainsworth Was Not Entitled to a Separate Verdict Form on Each Alternative Definition of
Intoxication

            Ainsworth claims the trial court erred in refusing to submit separate verdict forms, one for
a finding of driving while intoxicated by way of loss of normal use of mental or physical faculties,
and one for driving while intoxicated because of a BAC of at least .08. Because these are not
separate offenses, but simply alternative ways of proving that Ainsworth was intoxicated, we
overrule this point of error.
            We begin by noting that the verdict in every criminal action must be general. Tex. Code
Crim. Proc. Ann. art. 37.07, § 1(a) (Vernon Supp. 2005). A trial court has no authority, other than
in capital offenses, to submit a charge that is anything but general. Stewart v. State, 686 S.W.2d 118,
124 (Tex. Crim. App. 1984). 
            A person commits the offense of DWI if the person is intoxicated while operating a motor
vehicle in a public place. Tex. Pen. Code Ann. § 49.04(a). A person is intoxicated when he or she
loses the normal use of his or her mental or physical faculties by reason of the introduction of
alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those
substances, or any other substance into the body. Tex. Pen. Code Ann. § 49.01(2)(A) (Vernon
2003). Alternatively, a person is intoxicated when he or she has an alcohol concentration of .08 or
more ("per se" intoxication). Tex. Pen. Code Ann. § 49.01(2)(B) (Vernon 2003). These two
definitions of intoxication set forth alternate means by which the State may prove intoxication, rather
than alternate means of committing the offense. Bagheri v. State, 119 S.W.3d 755, 762 (Tex. Crim.
App. 2003); see also Ex parte Crenshaw, 25 S.W.3d 761, 766 (Tex. App.—Houston [1st Dist.]
2000, pet. ref'd). The conduct proscribed by the Texas Penal Code is the act of driving while in a
state of intoxication. Bagheri, 119 S.W.3d at 765. Therefore, the State may use either the loss-of-normal-use definition or the per se definition to prove the offense. Id.
            The State had to prove Ainsworth was intoxicated while operating a motor vehicle in a public
place. The information alleged, permissibly, two alternate methods of proving intoxication, and
there was evidence to support findings that Ainsworth had lost the normal use of his mental or
physical faculties, and also that he had a BAC of at least .08. "It is appropriate, when alternate
theories of committing the same offense are submitted to the jury in the disjunctive, for the jury to
return a general verdict of guilty if the evidence is sufficient to support a finding under any of the
theories submitted." Fulenwider v. State, 176 S.W.3d 290, 299 (Tex. App.—Houston [1st Dist.]
2004, pet. ref'd) (citing Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991)). We find
no error in the trial court's refusal to submit separate verdict forms and overrule this point of error.
 
(8)       Sufficient Evidence Supports the Conviction Based on Loss of Normal Faculties
            (a) Legal Sufficiency
            In his third point of error, Ainsworth claims the evidence was legally and factually
insufficient to support his conviction. In reviewing the legal sufficiency of the evidence, we view
the relevant evidence in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). Also, we point out that loss of mental or
physical faculties, and a BAC of .08, are simply alternative definitions of intoxication for purposes
of Section 49.04, not separate violations of the law. See Bagheri, 119 S.W.3d at 762.
            We have touched on pertinent points of evidence in earlier sections of this opinion. After
Ainsworth pulled his vehicle over, Frazier testified that he smelled a strong odor of alcohol on
Ainsworth's breath, and that the smell was present "continually" through the traffic stop. Ainsworth's
eyes were bloodshot and glassy. Ainsworth did not immediately follow Frazier's directions on the
one-leg-stand test; he had to reach twice for his truck to balance himself; he admitted consuming a
six-pack of beer, and he recognized the effect of such consumption on a person of his body weight. 
He said he was a "three," or had more than a slight loss of his mental and physical faculties at the
time of his stop. Ainsworth's statements acknowledging how much he had to drink and that he had
lost some use of his mental or physical faculties at the time he was driving are evidence of his
intoxication. The evidence is legally sufficient.
            (b) Factual Sufficiency
            In reviewing the factual sufficiency of the evidence, we are required to determine whether,
considering all the evidence in a neutral light, the jury was rationally justified in finding guilt beyond
a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). The jury is not
justified in finding guilt if the evidence supporting the verdict is too weak to support the verdict of
guilt beyond a reasonable doubt or if the evidence contrary to the verdict is too strong to allow the
verdict of guilt beyond a reasonable doubt to have been reached rationally. Threadgill v. State, 146
S.W.3d 654, 664 (Tex. Crim. App. 2004). The jury alone judges the credibility of witnesses, the
weight to be given their testimony, and the reconciliation of evidentiary conflicts. Whitaker v. State,
977 S.W.2d 595, 598 (Tex. Crim. App. 1998).
            Ainsworth offered no evidence or testimony. We do not find that evidence relating to
Ainsworth's loss of mental or physical faculties to be "too weak to support the verdict of guilt beyond
a reasonable doubt." Threadgill, 146 S.W.3d at 664. While it is true that, on the videotape,
Ainsworth does not have difficulty walking or saying the alphabet, and had only minor difficulties
with the assigned one-leg-stand test, he admitted to Frazier having lost at least some use of his
mental or physical faculties and admitted consuming a six-pack of beer. He also acknowledged such
quantity's impact on a person of his body weight. Frazier opined that Ainsworth had lost the normal
use of his mental or physical faculties and was intoxicated. The evidence was factually sufficient
to support the jury's verdict. We overrule this point of error.
(9)       Sufficient Evidence Supports the Conviction Based on Excess BAC

            Ainsworth complains the evidence was legally and factually insufficient to support a finding
of guilt under the per se definition of intoxication, that is, a BAC of at least .08. See Tex. Pen. Code
Ann. § 49.01(2)(B). Ainsworth complains that, where the State's expert could not and did not say
that the breath test results obtained eighty minutes after the traffic stop indicate a BAC of at least .08
at the time Ainsworth was driving, the evidence is too weak to support a finding of guilt beyond a
reasonable doubt. He offers no citation to authority for this argument.
            The printout of Ainsworth's breath specimen was admitted into evidence. Barbosa described
how the Intoxilyzer device works and measures a person's BAC, and described the proper procedures
for administering a breath test. The first attempt at a breath sample was defeated by some form of
radio interference, which Frazier testified could have been caused by a cellular telephone. Two
samples were then obtained, showing Ainsworth to have BACs of .148 and .145.
            Intoxilyzer results are probative without retrograde extrapolation testimony. Stewart v. State,
129 S.W.3d 93, 97 (Tex. Crim. App. 2004) (breath test results obtained some eighty minutes after
traffic stop probative of issue of whether defendant drove while intoxicated and whether defendant
had BAC over legal limit when operating motor vehicle). See also Mechler, 153 S.W.3d at 440
(Intoxilyzer test results should have been admitted, as probative of issue of whether defendant was
intoxicated, under both per se and impairment definitions of intoxication, when driving).
            The breath test results were probative and admissible, notwithstanding the lack of testimony
regarding retrograde extrapolation.
            We affirm the judgment of the trial court.


                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          December 28, 2005
Date Decided:             March 20, 2006

Do Not Publish