Affirmed and Memorandum Opinion filed August 30, 2007








Affirmed and Memorandum Opinion filed August 30, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00360-CR

____________

 

JOSEPH EUGENE LINKEY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 122nd
District Court

Galveston County, Texas

Trial Court Cause No. 04CR1691

 



 

M E M O R A N D U M    O P I N I O N








Appellant Joseph Eugene Linkey was convicted for driving
while intoxicated (ADWI@) and sentenced to
four years= imprisonment in the Institutional Division of the
Texas Department of Criminal Justice.[1] 
On appeal, he argues that he was denied his right to a unanimous jury verdict
because the charge permitted the jury to convict if it found that appellant
drove while alcohol or drugs deprived him of Athe normal use of
mental or physical@ faculties.  In addition, appellant
challenges the factual sufficiency of the evidence.  We affirm.

I.  Factual
and Procedural History

Kira Cox was stopped at a red light when her car was struck
from behind by a red truck driven by appellant.  The impact caused Cox=s car to strike
the vehicle in front of her.  When the light turned green, Cox and the driver
of the first vehicle pulled over, but appellant swerved his truck around the
two vehicles and sped away.  Cox pursued appellant onto the freeway and
followed him at speeds of 90B95 m.p.h. as appellant wove in and out of
traffic.  Appellant exited the freeway, but according to Cox, he Aslammed on the
brakes@ bringing his
truck to a stop and forcing Cox to swerve to avoid a second collision.  Cox
then pulled in front of appellant and stopped, and appellant moved his truck to
Cox=s left, stopped
next to her, and asked why she was following him.  Cox told appellant that he
had hit her vehicle, and according to Cox, he responded, AI did?@  Cox and
appellant then agreed to drive to a gas station. 

Cox testified that she and appellant parked their vehicles
as agreed and she showed appellant the damage to her car.  According to Cox,
she said, ALook what you did to my car,@ and appellant
responded, AI did that?@  Cox further
testified that appellant asked her if she wanted a drink, and Cox answered, ANo, I want you to
fix my car.@  After their conversation, appellant went into the
gas station, while Cox waited outside.  








Cox=s passenger, Jacquelyn Lange, also
testified at trial.  Like Cox, she described the impact as Apretty hard.@  She similarly
testified that Cox and the vehicle in front of her pulled over, and that
appellant swerved around them and onto the freeway where Cox pursued him at
speeds of 90B95 m.p.h.  Like Cox, Lange testified that appellant
drove down an exit ramp and stopped quickly, forcing Cox to veer around him. 
She similarly testified that Cox and appellant stopped at a gas station, and
that Cox and appellant had a conversation outside of the vehicles before
appellant went into the gas station.  During this conversation, Lange was
speaking on a telephone to the police.

Officer Marty Adcock of the League City Police Department
testified that he responded to the call and observed slight damage to Cox=s vehicle,
including a transfer of red paint to the car=s rear bumper. 
Appellant emerged from the gas station eating potato chips, and Officer Chris
Skendziel began to administer field sobriety tests.  Adcock testified, AI could smell a
strong odor of alcohol.  I noticed that the subject had red, glassy, bloodshot
eyes; very slurred speech.  Motor skills didn=t seem normal.  He
seemed somewhat impaired.@  Adcock identified these as signs of
intoxication, and agreed that slurred speech is not normally a Asymptom of
tiredness.@  According to Adcock, appellant Awas not very
steady on his feet@ but did not stumble when taken to the
police car.  In Adcock=s opinion, appellant was intoxicated and
did not have the normal use of his mental and physical faculties.

Officer Skendziel testified that appellant was eating
potato chips as he exited the gas station; Skendziel testified that he did not
detect the smell of alcohol on the appellant while at the gas station, but the
smell of the chips was Apretty strong.@  Skendziel
described appellant as Akind of surprised or confused.  He was
slow to answer questions a little bit.  He did have slurred speech.@  Skendziel also
testified that he found a knife in appellant=s pocket after
appellant denied possessing weapons.  Skendziel stated that he began to
administer the horizontal gaze nystagmus (AHGN@) test but had to
repeat instructions to appellant three or four times.  Skendziel explained that
the HGN test can produce six Aclues@ of intoxication,
and people who are tired do not normally fail the HGN test.  According to
Skendziel, he had administered half of the test and detected three clues of
intoxication when appellant refused further testing.  The officers= interaction with
appellant was videotaped from Skendziel=s patrol car.  








Appellant was initially arrested for public intoxication,
but after Cox and Lange verified that appellant was the driver of the truck
involved in the collision, Skendziel changed the charge to driving while
intoxicated.  Appellant was taken to the police station, and Skendziel
testified that when he opened the back door of the police car or walked beside
appellant, he could smell alcohol.[2] 
According to Skendziel, appellant was intoxicated and was not in normal control
of his mental and physical faculties.  At the station, appellant was videotaped
as he refused further field sobriety testing and refused to accept or sign a
copy of the statutory warning for DWI.  He also refused to give a breath sample
or to read a questionnaire.  This portion of the videotape, however, did not
capture sound.

Appellant=s father testified that appellant=s truck had no
major damage, and appellant=s employer, Larry Barber, testified that
appellant had been at Barber=s house from approximately 8:00 p.m. until
around midnight.  According to Barber, there were about ten people at his house
at that time, and appellant had three or four beers before 9:30 p.m.  He also
testified that he could not say how many beers appellant had because he did not
keep track.  Barber described appellant as bipolar and Aa little short
tempered@ but a dependable
worker.  When asked if he would lose a valued employee if appellant were
convicted, Barber responded, AAbsolutely.@  Finally,
appellant=s friend and co-worker, Richard McClelland, testified
that he had been at Barber=s house that evening, and had not seen
appellant drinking at all.  According to McClelland, appellant Alooked like he had
been hit by a semi, tired, wore out.@  McClelland indicated
that appellant had worked throughout the preceding night and day.

The jury was charged to find appellant guilty if he drove
while Aintoxicated by not
having the normal use of mental or physical facilities [sic]@ due to alcohol or
drugs.  The jury convicted him of the offense with enhancements for two prior
convictions, and the court sentenced him to four years= imprisonment. 
This appeal ensued.








II.  Issues
Presented

In his first issue, appellant contends that he was denied
his constitutional and statutory right to a unanimous jury verdict because the
trial court=s charge permitted the jury to convict him if some
jurors found he had lost the normal use of his physical faculties, but others
found he had lost the normal use of his mental faculties.  In his second issue,
appellant contends the evidence is factually insufficient to support his
conviction.  Specifically, appellant asserts that the evidence against the
verdict is so strong that the Abeyond a reasonable doubt@ standard for
conviction could not have been met. 

III.  Discussion

A.      Jury
Unanimity








When analyzing allegations of charge errors, we perform a
two-step review: first, we determine whether the charge is erroneous; if so, we
determine whether the error caused sufficient harm to require reversal.  Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  In determining
whether a jury charge erroneously permitted a non-unanimous verdict, we begin
by examining the language of the statute to determine the elements of the crime
and whether the legislature has created a single offense with multiple or
alternate methods of commission.  Jefferson v. State, 189 S.W.3d 305,
311 (Tex. Crim. App. 2006).  While jury unanimity is required on the essential
elements of an offense, the jury generally is not required to return a
unanimous verdict on the specific method of committing a single offense.  Id.;
see also Ngo v. State, 175 S.W.3d 738, 747 n.32 (Tex. Crim. App. 2005)
(en banc).      Texas law provides that a person is Aintoxicated@ for purposes of
the DWI statute if (a) he has a blood alcohol concentration of 0.08 or
more, or (b) he does not have Athe normal use of
mental or physical faculties by reason of the introduction of alcohol,@ drugs, Aa combination of
two or more of those substances, or any other substance into the
body . . . .@  Tex. Penal Code ' 49.01(2)(B) &
(A) (Vernon 2003).  The separate statutory definitions of Aintoxicated@ constitute two
alternate means of committing the one offense of driving while intoxicated.  Ex
parte Crenshaw, 25 S.W.3d 761, 766 (Tex. App.CHouston [1st
Dist.] 2000, pet. ref=d); Fulenwider v. State, 176 S.W.3d
290, 298B99 (Tex. App.CHouston [1st
Dist.] 2004, pet. ref=d); Kilgo v. State, 880 S.W.2d 828,
830 (Tex. App.CDallas 1994, pet. ref=d).  In this case,
for a unanimous verdict, each juror must have agreed that appellant was
intoxicated while operating a motor vehicle in a public place.  It is not
necessary for all jurors to agree that appellant=s impairment was
physical or that the impairment was mental.  See Ngo at 747 (Acriminal jury must
unanimously agree on each >element= of the crime in
order to convict, but need not agree on all the >underlying brute
facts [that] make up a particular element=@) (quoting
Richardson v. United States, 526 U.S. 813, 817 (1999)); Stewart v. State,
129 S.W.3d 93, 97 (Tex. Crim. App. 2004) (en banc) (AThe jury only
needed to believe beyond a reasonable doubt that either her blood alcohol
concentration was 0.10 or more, or that she failed to have the normal use of
her mental or physical faculties by reason of introduction of alcohol into her
body, at the time she drove.@).  

We were presented with the identical argument in Bradford
v. State.  BS.W.3dB, No.
14-06-00349-CR, 2007 WL 1814203 (Tex. App.CHouston [14th
Dist.] June 26, 2007, no pet. h.).  There, we explained:

[A]ppellant was charged in this case with one instance of committing
one criminal act or offense, driving while intoxicated.  See Bagheri,
119 S.W.3d at 762.  Intoxication, an element of that offense, can be
demonstrated through either the impairment theory or the per se theory.  Stewart
129 S.W.3d at 97.  The impairment theory, in turn, requires proof of not having
the normal use of mental or physical faculties.  Id.  Because there was
only a single criminal act of driving while intoxicated alleged in this case,
there were no separate criminal acts on which the jurors could disagree to
produce a lack of unanimity.

Id. at *3.








The same reasoning applies in the present case.  Regardless
of the nature of appellant=s impairment, jurors unanimously agreed
that he was guilty of the essential elements of the charged offense.  We
therefore overrule appellant=s first issue.

B.      Factual Sufficiency

We begin a factual-sufficiency review by viewing all of the
evidence in a neutral light. Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006) (citing Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim.
App. 1997) (en banc)).  We may not re-weigh the evidence or substitute our
judgment for that of the jury.  See Cain, 958 S.W.2d at 407.  Unless the
record clearly reveals a different result is appropriate, we Amust defer to the
jury=s determination
concerning what weight to give contradictory testimonial evidence because
resolution often turns on an evaluation of credibility and demeanor.@  Johnson v.
State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000) (en banc).  We will reverse
only if we are able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury=s verdict.  Watson,
204 S.W.3d at 417.    In his brief on appeal, appellant contends that A[t]he State=s video was the
best evidence to show sobriety@ because the video shows appellant Awas steady on his
feet.@  He further
argues that appellant=s employer was Ajust kind of
guessing whether or not and how much [appellant] was drinking@ and McClelland
did not see appellant drink anything.  Appellant also suggests that he could
not have driven 90B95 m.p.h. while weaving in and out of
traffic without an accident if he had been impaired.








Appellant=s statement that the videotape shows him
standing steadily at the police station is correct, but in the portion of the
videotape filmed at the gas station, appellant is so far from the camera  that
he appears as a partial and indistinct silhouette largely blocked from view by
his truck.  This portion of the film, however, is accompanied by an audio
recording.  In the recording, the jury could hear that appellant seemed
markedly confused, his speech was slurred, and he was slow to answer
questions.  When asked about drugs or medication, appellant said, AI take Depakote
and Trazodone but I haven=t been on them.@  Appellant=s conduct in
driving into the back of Cox=s car is also evidence of physical or
mental impairment, and his high-speed flight from the scene of the accident
demonstrates a significant lapse in judgment.  Appellant=s decision to stop
suddenly in the middle of the road, nearly causing a second accident only
minutes after causing one collision, is further evidence that appellant did not
have the normal use of his mental faculties.  

On this record, we are unable to say that the great weight
and preponderance of the evidence contradicts the jury=s verdict.  There
is no requirement that the State produce an eyewitness to testify that the
accused consumed a certain quantity of alcohol within a certain time of the
alleged offense; thus, the testimony of Barber and McClelland, if believed by
the jury, is not inconsistent with the finding that appellant was intoxicatedCby alcohol or
otherwiseCat the time he later drove his truck.  The jury may
have assessed the evidence and the credibility of the witnesses and concluded
that appellant was intoxicated through the use of alcohol or through the use of
another substance, singly or in combination.  The preponderance of the evidence
does not contradict such a conclusion.  Accordingly, we overrule appellant=s second issue.

IV.  Conclusion

We conclude the jury charge was not erroneous and the
evidence is factually sufficient to support the verdict.  We therefore affirm
the trial court=s judgment.

 

 

 

 

/s/      Eva M. Guzman

Justice

 

 

Judgment rendered
and Memorandum Opinion filed August 30, 2007.

Panel consists of
Justices Frost, Seymore, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  This was his third such conviction.





[2]  Appellant had left the potato chips in his truck at
the officer=s instructions.