**The STATE of Texas, Appellant,**

v.

**Lorenzo C. MORENO, Appellee.**

**No. 818–89.**

Court of Criminal Appeals of Texas,
En Banc.

April 10, 1991.

**328**

W.J. Sames, Corpus Christi, for appellee.

Carlos Valdez, County Atty., Corpus Christi, Robert Huttash, State's Atty., and Matthew W. Paul, Asst. State's Atty., Austin, for the State.

## OPINION ON THE STATE'S PETITIONS FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

The issues involved in this case concern the parameters of the State's power to appeal from a trial court's order.

The State charged Lorenzo C. Moreno with prostitution alleging in its information that he "knowingly agree[d] to engage in sexual conduct, to wit: deviate sexual in-

tercourse with R. Vela for a fee, to wit: $10.00 payable to said R. Vela, said deviate sexual intercourse being the contact of Lorenzo C. Moreno's mouth with R. Vela's penis." Moreno filed a motion to quash the information alleging that the term "agree" should be defined in greater detail. He wrote in his motion that if "the same is by written agreement, or by conduct, or by orally spoken words, or by any combination, the same should be alleged and further if by words, such words should be alleged so as Defendant may know what words are intended to constitute the element 'agreed.'" In his motion, Moreno prayed "that the information be quashed and the cause dismissed." After a hearing on the motion, the trial court agreed that the information should be quashed. The order which was drawn up by defense counsel contained the language "and this cause is dismissed." The trial court, however, struck through this language before signing the order such that it read: "THEREFORE, IT IS HEREBY ORDERED AND DECREED that defendant's Motion to Quash is hereby Granted, the Complaint and Information are hereby quashed and this cause is dismissed."[1] The State appealed.

Relying upon *Hancox v. State*, 762 S.W.2d 312 (Tex.App.—Fort Worth 1988, pet. ref'd), the Court of Appeals held that it did not have jurisdiction to entertain the State's appeal. Specifically, the Court of Appeals held that:

"Under some circumstances, the granting of a motion to quash might be tantamount to dismissal of the charging instrument. We are not presented with such a circumstance here.

"In the present case the trial court's order required the State to give appellee additional notice of the allegation 'agree.' That action cannot be construed as one which dismisses the information or any portion of it. The State had, and still has the right to amend the information to provide the notice appellee complained of

---

1. The order also contained language that "The State not having requested leave to amend, the Court further finds that this cause should be dismissed." The trial court also struck through this language.

in his motion to quash. This is because the legislature granted the right to amend [the] information [or] indictment on matter[s] of form or substance in enacting articles 28.09 and 28.10 of the Texas Code of Criminal Procedure (Vernon Pamphlet 1988). Since the trial court did not order the information dismissed and the State can cure the alleged defect in form by amendment and continue its prosecution, we are unwilling to hold that the granting of this motion to quash constitutes a dismissal of the information. Accordingly, we conclude that article 44.01 does not allow the State to appeal the trial court's ruling." *State v. Moreno*, 769 S.W.2d 661, 662 (Tex.App. —Corpus Christi, 1989).

Thus, the Court relied upon the fact that the trial court marked through language in the order that "dismissed" the indictment and noted that the State was not denied the opportunity to amend the information or that the State refused to amend. In short, the State was required to attempt to amend the charging instrument, under Article 28.-01, V.A.C.C.P., as a predicate to its right to appeal. We cannot agree with the Court of Appeals' holding.

■ Article 44.01, V.A.C.C.P., provides, in pertinent part, that the State is entitled to appeal from a trial court's order in a criminal case if such *"dismisses* an indictment, information, or complaint or any portion of an indictment, information, or complaint." (Emphasis added.) The issue revolves around what is meant by the term "dismisses." When the Legislature enacted Article 44.01, it employed neither the language used in the Texas Code of Criminal Procedure nor the terminology commonly used in Texas to question the validity of indictments and informations.[2] Notwithstanding this abstruseness, the Legislature made abundantly clear in the Bill Analysis that it intended to extend to the State appellate powers akin to those that the United States Congress had extended to the federal government in a criminal case.[3] Consequently, we will look to the federal government's powers to appeal from an order "dismissing an indictment" in a criminal case to understand the param-

2. It would have been more appropriate for our Legislature to speak in terms of "setting aside" an indictment or information—the language used in the Texas Code of Criminal Procedure. See Articles 28.01, 28.04 and 28.05, V.A.C.C.P. However, when the Texas Legislature enacted Article 44.01, as discussed below, it borrowed liberally from its federal counterpart, 18 U.S.C. § 3731, which in turn used the terminology of Rule 12(a) of the Federal Rules of Criminal Procedure:

"Pleadings in criminal proceedings shall be the indictment and the information, and the pleas of not guilty, guilty and nolo contendere. All other pleas, and demurrers and motions to quash are abolished, and defenses and objections raised before trial which heretofore could have been raised by one or more of them shall be raised only by motion to dismiss or to grant appropriate relief, as provided by these rules."

Consequently, Article 44.01 uses the federal terminology of "dismissing an indictment."

3. The "Background" provision contained within the Bill Analysis to Senate Bill 762 provides:

"The Texas Constitution provides that the State has no right to appeal in a criminal case, making Texas the only state that bans all prosecution appeals. This prohibition is viewed as a serious problem in the administration of criminal justice for several reasons:

(1) On occasion, defendants are released because of questionable legal rulings excluding what may be legally admissible evidence; (2) Legal issues that have been wrongly decided by trial courts nevertheless stand as precedent, albeit unbinding, for police, prosecutors, and courts; and (3) Trial judges may have a tendency to resolve doubtful legal questions in favor of the defendant because such a ruling cannot harm the judge's reversal rate. "The Texas constitutional ban, which has been in place since 1876, had its genesis in the Federal constitutional right not to be twice put in jeopardy for the same offense. In varying degrees, the federal government and all the states have enacted legislation to accommodate both a defendant's right to be free from multiple trials for the same offense and the state's right to appeal erroneous legal rulings. The focal point in the balance is that the prosecutor's right to appeal is exclusively upon legal, not factual issues.

"The federal statute permits government appeals from orders dismissing an indictment or arresting judgment. However, the federal provision does not permit an appeal from the granting of a new trial or from an illegal sentence. Under the federal statute, the U.S. attorney must certify that the evidence 'is substantial proof of a fact material in the proceedings' and requires appeals [to] be filed within 30 days."

eters of the State's appellate powers under Article 44.01.

Based upon the common-law rule that the sovereign had no right to appeal an adverse criminal judgment, the Supreme Court early held that the government could not take an appeal in a criminal case without express statutory authority. *United States v. Sanges*, 144 U.S. 310, 313–318, 12 S.Ct. 609, 610–612, 36 L.Ed. 445 (1892) and cases cited therein. Fifteen years later, in 1907, Congress passed the Criminal Appeals Act and for the first time conferred jurisdiction on the Supreme Court to consider appeals by the government in criminal cases. See 34 Stat. 1246.[4]

Interpretation of the Act, however, proved to be difficult for the Supreme Court. Pursuant to the common-law rules, the Court held that the "exceptional right of appeal given to the Government by the Criminal Appeals Act is strictly limited to the instances specified." *United States v. Borden Co.*, 308 U.S. 188, 192, 60 S.Ct. 182, 185, 84 L.Ed. 181 (1939). The Court deemed such appeals as "something unusual, exceptional, not favored." *Will v. United States*, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967), quoting from *Carroll v. United States*, 354 U.S. 394, 400, 77 S.Ct. 1332, 1336, 1 L.Ed.2d 1442 (1957). See also *United States v. Keitel*, 211 U.S. 370, 399, 29 S.Ct. 123, 132, 53 L.Ed. 230 (1908); *United States v. Dickinson*, 213 U.S. 92, 103, 29 S.Ct. 485, 488, 53 L.Ed. 711 (1909). Because the Act was construed in accordance with the common-law, the rules regulating the government's power to appeal became highly technical.

The Supreme Court on a number of occasions was forced to struggle with delineating its and the courts of appeals' jurisdiction under the Act. See, e.g., *United States v. Weller*, 401 U.S. 254, 91 S.Ct. 602, 28 L.Ed.2d 26 (1971); *United States v. Mersky*, 361 U.S. 431, 80 S.Ct. 459, 4 L.Ed.2d 423 (1960). Eventually, the Act provoked the Supreme Court to declare:

> "Clarity is to be desired in any statute, but in matters of jurisdiction it is especially important. Otherwise the courts and the parties must expend great energy, not on the merits of the dispute settlement, but on simply deciding whether a court has the power to hear a case. When judged in these terms, the Criminal Appeals Act [18 U.S.C. § 3731] is a failure. Born of compromise, and reflecting no coherent allocation of appellate responsibility, the Criminal Appeals Act proved a most unruly child that has not improved with age. The statute's roots are grounded in pleading distinctions that existed at common law which, in most instances, fail to coincide with the procedural categories of the Federal Rules of Criminal Procedure. Not only does the statute create uncertainty by its requirement that one analyze the nature of the decision of the District Court in order to determine whether it falls within the class of common-law distinctions for which an appeal is authorized, but it has also engendered confusion over the court to which an appealable decision should be brought." *United States v. Sisson*, 399 U.S. 267, 308, 90 S.Ct. 2117, 26 L.Ed.2d

---

**4.** The Act permitted limited governmental appeals from a trial court's decision. Specifically, it provided in pertinent part that:

"[A] writ of error may be taken by and on behalf of the United Sates from the district or circuit courts direct to the Supreme Court of the United States in all criminal cases, in the following instances, to wit:

"From a decision or judgment quashing, setting aside, or sustaining a demurrer to any indictment, or any count thereof, where such decision or judgment is based upon the invalidity, or construction of the statute upon which the indictment is founded...."

"From a decision arresting a judgment of conviction for insufficiency of the indictment,

where such is based upon the invalidity or construction of the statute upon which the indictment is founded."

"From a decision or judgment sustaining a special plea in bar, when the defendant has not been put in jeopardy."

Congress amended the Criminal Appeals Act several times after original enactment. The most significant change in the statute was the 1942 amendment providing for jurisdiction in the Courts of Appeals. See 56 Stat. 271. Another significant amendment occurred in 1968 when Congress authorized governmental appeals from any pretrial ruling granting motions to suppress or ordering the return of seized property. 82 Stat. 237.

608 (1970) (footnotes omitted) (plurality opinion).

Responding to the Supreme Court's criticisms, Congress, with the specific intent of broadening the government's appellate powers, disposed of the Act in 1971 and replaced it with another. See *Arizona v. Manypenny*, 451 U.S. 232, 247 n. 24, 101 S.Ct. 1657, 1667 n. 24, 68 L.Ed.2d 58 (1981). Enacted as part of Title III of the Omnibus Crime Control Act of 1970, Section 3731 of Title 18 of the United States Code now provides, in pertinent part:

> "In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.
>
> "An appeal by the United States shall lie to a court of appeals from a decision or order of a district court[ ] suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is substantial proof of a fact material in the preceding.
>
> "An appeal by the United States shall lie to a court of appeals from a decision of order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.
>
> "The appeal shall in all such cases be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.
>
> "The provisions of this section shall be liberally construed to effectuate its purposes."

By providing that the statute "shall be liberally construed to effectuate its purposes," the new statute abrogated the common-law's adherence to strict interpretation which had precipitated much confusion under the old Act.

In 1975, the Supreme Court had its first opportunity to interpret the new statute. In *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), the Court examined the congressional intent behind the statute to resolve issues concerning the extent of its and the Court of Appeals' jurisdiction to entertain a governmental appeal in a criminal case. The Court observed:

> "[T]he legislative history [of 18 U.S.C. § 3731] makes it clear that Congress intended to allow appeals whenever the Constitution would permit.
>
> "A bill proposed by the Department of Justice would have permitted an appeal by the United States 'from a decision, judgment, or order of a district court dismissing an indictment or information or terminating a prosecution in favor of a defendant as to any one or more counts, except that no appeal [would] lie from a judgment of acquittal.' The Senate Report on this bill indicated that the Judiciary Committee intended to extend the Government's appeal rights to the constitutional limits.

> \* \* \* \* \* \*

> "The Conference Committee made two important changes in the bill, although it offered no explanation for them. The Committee omitted the language purporting to permit an appeal from any order 'terminating a prosecution in favor of a defendant,' and it removed the phrase that would have barred appeal of an acquittal. In place of that provision, the Committee substituted the language that was ultimately enacted under which an appeal was authorized 'from a decision, judgment, order of a district court dismissing an indictment or information ... except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.'

"These changes are consistent with the Senate Committee's desire to authorize appeals whenever constitutionally permissible, but they suggest that Congress decided to rely upon the courts to define the constitutional boundaries rather than to create a statutory scheme that might be in some respects narrower or broader than the Fifth Amendment would allow." 420 U.S. at 338–339 (citations and footnotes omitted).

To the *Wilson* Court, it "seem[ed] inescapable that Congress was determined to avoid creating non-constitutional bars to the Government's right to appeal." 420 U.S. at 339, 95 S.Ct. at 1019. Consequently, adhering to congressional intent, the Court held that Section 3731 "remove[s] all statutory barriers to Government appeals ... [so as to allow] appeals whenever the Constitution would permit." 420 U.S. at 337, 95 S.Ct. at 1018. In a case subsequent to *Wilson,* a defendant questioned the jurisdiction of the Supreme Court and of the Court of Appeals to entertain a governmental appeal from an order dismissing a mere portion of one count of an indictment. The Supreme Court easily dispensed with the question in a footnote:

> "We have on several occasions observed that the jurisdictional statute authorizing Government appeals, 18 U.S.C. § 3731 (1976 ed.) was 'intended to remove all statutory barriers to appeals *from orders terminating prosecutions.'* United States v. Martin Linen Supply Co.,* 430 U.S. 564, 568, 97 S.Ct. 1349 [1352], 51 L.Ed.2d 642 (1977), quoting *United States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013 [1018], 43 L.Ed.2d 232 (1975). We therefore immediately turn to the constitutional issues." *Sanabria v. United States,* 437 U.S. 54, 63 n. 16, 98

S.Ct. 2170 [2178 n. 16], 57 L.Ed.2d 43 (1978) (emphasis added).

 As noted above, when our Legislature adopted Article 44.01 in 1987, it made clear its intent to afford the State the same appellate powers afforded the federal government under 18 U.S.C. § 3731.[5] Consequently, we hold that the State has the power to appeal from any trial court order concerning an indictment or information (and the Court of Appeals has the jurisdiction to address the merits of the appeal from that order) whenever the order effectively terminates the prosecution in favor of the defendant.[6]

In the case before us, however, Moreno argues, and the Court of Appeals agrees, that the prosecution against him has not terminated for two reasons. First, he argues that the prosecution has not terminated because the trial court's order did not specifically "dismiss" the information. Second, he argues that the prosecution has not terminated because the State has the option of amending the information and proceeding to trial afterwards. We find no merit in either of these arguments.

 The mere label attached either to the defendant's motion or to the trial court's order ruling on same cannot determine its appealability under 18 U.S.C., Section 3731. "To·so rule would import an empty formalism into a statute expressly designed to eliminate 'technical distinctions in pleadings as limitations on appeals by the United States.'" *Sanabria v. United States,* 437 U.S. at 69 n. 23, 98 S.Ct. at 2181 n. 23, quoting the House Rules Committee Report on 18 U.S.C. § 3731. See also *United States v. Horak,* 833 F.2d 1235, 1245 (7th Cir.1987). In *United States v. Tranowski,* 702 F.2d 668 (7th Cir.1983), cert. denied, 468 U.S. 1217, 104 S.Ct. 3586, 82

---

5. Moreover, it is a generally accepted rule of statutory construction that when the Legislature adopts a "foreign" statute it also adopts the construction of that statute by the foreign jurisdictions occurring prior to the Texas enactment. *Castillo v. State* (Tex.Cr.App. Nos. 339–89, 340–89 and 341–89, October 31, 1990); *State v. Klein,* 224 S.W.2d 250 (Tex.Cr.App.1949); *Blackmon v. Hansen,* 169 S.W.2d 962 (Tex.1943).

6. Of course, it is well settled that a verdict of acquittal can not be reviewed regardless of how egregiously wrong the verdict may be. *United States v. Sisson,* 399 U.S. 267, 289–290, 90 S.Ct. 2117, 2129–2130, 26 L.Ed.2d 608 (1970); *United States v. Ball,* 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896).

L.Ed.2d 884 (1984), the Court of Appeals allowed the government to appeal from district court's denial of its motion to retry the defendant following reversal of the original conviction. The Court reasoned that such an appeal was permitted under Section 3731 because the district court's order was " 'tantamount to a dismissal of the indictment ...,' though not labeled a dismissal." 702 F.2d at 670, quoting *United States v. Esposito*, 492 F.2d 6, 10 (7th Cir.1973), cert. denied, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 760 (1974). See also *United States v. Apex Distributing Co.*, 270 F.2d 747, 750 (9th Cir.1959) (holding that "the direction the Government's appeal must take, or whether it may appeal at all, is to be governed by the substantial basis of the orders sought to be reviewed rather than their designation and form"). We too hold that in the case before us the trial court's order "quashing" the information in essence terminated the proceedings.[7] Indeed, if we were to allow trial courts the unfettered discretion to protect their erroneous or questionable rulings merely by calling them something other than dismissals, this would vitiate any power of the State to appeal. One of the problems that the Legislature saw in the State's inability to appeal was that a trial court could "resolve doubtful legal questions in favor of the defendant because such a ruling cannot harm the judge's reversal rate." Because Article 44.01 must be "liberally construed [so as] to achieve [its] purpose," V.T.C.A. Government Code, Section 312.006, we decline to allow the trial court to shelter its orders through the use of nomenclature. An appellate court, in order to determine its jurisdiction, must look to the effect of any orders concerning an indictment or information, not what the trial court or the parties at trial have labeled such orders.

■ Moreover, we find that it is of no significance that the State has the option of amending the information in the case before us. We note that notwithstanding provisions allowing for the amendment of indictments and informations under federal law, see Fed.R.Crim.P. 7(e), we have not been able to find a single case where such has been a prerequisite to the exercise of the federal government's power to appeal from a district court's order granting the defendant's motion to set aside an information or indictment due to inadequate notice. See *United States v. Conlon*, 628 F.2d 150, 155 (D.C.Cir.1980) (not questioning jurisdiction of governmental appeal from order dismissing indictment for its failure to allege "specific acts of negotiating"). See also *Sanabria v. United States*, 437 U.S. 54, 63 n. 16, 98 S.Ct. 2170, 2178 n. 16, 57 L.Ed.2d 43 (1978); *United States v. Sanabria*, 548 F.2d 1, 5 (1st Cir.1976) *reversed for other reasons*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *United States v. Lewis*, 519 F.2d 98, 100–101 (5th Cir. 1975). See generally ANNOT. *Dismissal of Indictment or Information as Reviewable on Appeal by the United States Under 18 USCS § 3731, as Amended by the Omnibus Crime Control Act of 1970*, 30 A.L. R.Fed. 655 (1976 and Supp.1990). Cf., *United States v. Guest*, 383 U.S. 745, 749–753, 86 S.Ct. 1170, 1173–1175, 16 L.Ed.2d 239 (1966) (Government could not appeal from dismissal order finding that indictment was insufficient to charge an offense when the statute in force at that time only allowed appeal from order dismissing an indictment or information "where such decision or judgment is based upon the inval-

---

**7.** In essence, what occurred in the case before us, is that Moreno sought to "set aside" the information (using the terminology correct under the Code of Criminal Procedure) for its failure to adequately inform him of the nature of the State's charges. The trial court granted this motion and effectively foreclosed the State from proceeding with the information under which it wished to proceed and thus foreclosed the State from proceeding under its theory of prosecution. The fact that the trial court marked through language in the order that would have "dismissed" the charges against Moreno is superfluous; for all intents and purposes, the trial court's actions forced the State to alter its pleadings—either by re-indicting or amending the original—before it would be allowed to try Moreno. The State's refusal to amend effectively terminated the criminal proceedings. To say that the action against Moreno was not "dismissed" merely because the trial court did not employ that or similar language is to exalt form over substance.

idity or construction of the statute upon which the indictment is founded"—language no longer found in the present statute); *United States v. Wayne Pump Co.*, 317 U.S. 200, 63 S.Ct. 191, 87 L.Ed. 184 (1942) (same). Because the Legislature intended to grant the same power of appeal to the State of Texas that Congress extended to the federal government, we therefore hold that the trial court "effectively terminates" the prosecution against the accused whenever the effect of its order forces any alteration of the indictment or information before the trial on the merits and the State is not willing to comply with that order. The fact that the State has appealed the decision of the trial court should be sufficient indication to the Court of Appeals that the State is unwilling to alter the indictment or information and that for all practical purposes, the prosecution in the trial court has "terminated."[8]

The judgment of the Court of Appeals is reversed and the cause is remanded to that court for consideration of the merits of the State's appeal.

OVERSTREET and MALONEY, JJ., concur in the result only.

CLINTON, Judge, dissenting.

The issue here arises under an amendment to the Constitution of Texas; it should be decided on the basis of State law and within applicable State statutes. See *State v. Eaves*, 800 S.W.2d 220 (Tex.Cr. App.1990).

Merely because a bill analysis alludes to a federal statute permitting appeals by the government does not mean the Legislature "intended to extend the same appellate powers akin to those that the United States Congress had extended to the federal Government in a criminal case." At 329. To adopt wholesale a body of federal law without determining whether it is consistent with our own appellate rules and practice abdicates responsibilities of this Court to construe the law of this State.

Our cases, e.g., *State v. Eaves*, supra, *State v. Eaves*, 786 S.W.2d 396 (Tex.App.—Amarillo 1990), and *State v. Hancox*, 762 S.W.2d 312 (Tex.App.—Fort Worth 1988) PDR refused, as well as the opinion below, also reviewed similar orders rendered by a trial court to determine whether it "effectively terminated the prosecution and was therefore appealable by the State." However, that determination was made by construing our own statutory scheme rather than decisions under the federal statute. None has suggested that a trial court "effectively terminates" a prosecution "whenever the effect of its order forces any alteration of the indictment or information before the trial on the merits and *the State is not willing to comply with that order,*" and indicates its recalcitrance by giving notice of appeal. At 334. Indeed, that federal courts have so applied their statute is most doubtful: the majority cites no authority and this dissenter is not obliged to ascertain whether there is any extant.

---

**8.** We are well aware that indictment pleading at the federal level is quite different than at the State level due to disparate discovery practices. For example, federal law, unlike State law, provides that the trial court may "direct the filing of a bill of particulars." See Fed.R.Crim.P. 7(e). Such would necessarily aid the accused in determining the allegations set forth by providing him with additional information not contained within the indictment or information. Moreover, federal law, once again unlike State law, mandates that the accused be afforded the discovery of certain evidence prior to trial. See Fed.R.Crim.P. 16. (If Moreno, in the case before us, had been in federal court and had couched his "Motion to Quash" in terms of a discovery motion, Rule 16 would have mandated that the State provide "any relevant written or recorded statements made by the defendant.") However, we can think of no reason why differences in discovery practices would or should justify jurisdictional differences. See *United States v. Conlon*, 628 F.2d 150, 156 (D.C. Cir.1980) (holding that a bill of particulars cannot cure a defective indictment). Furthermore, although Texas law does not mandate the type of discovery occurring at the federal level, nothing would prevent the trial court from exercising its discretion to allow such.