**The STATE of Texas, Appellant,**

v.

**Thomas R. YOUNG, Emma L. Horn, Ambus Horn, Curtis J. McKelvey, Appellees.**

**No. 875-90.**

Court of Criminal Appeals of Texas, En Banc.

June 5, 1991.

Stanley G. Schneider, W. Troy McKinney, Ronald G. Weisenthal, Houston, for appellees.

John B. Holmes, Jr., Dist. Atty., J. Harvey Hudson and Jim Lindeman, Asst. Dist. Attys., for appellant.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLEES' PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

Appellees, Thomas R. Young, Emma L. Horn, Ambus Horn and Curtis J. McKel- vey, were charged in eight indictments (each was charged with two counts) with bribery. In the trial court, appellee Young, joined by the three other appellees, filed an application for writ of habeas corpus alleging the grand jury had been discharged before the indictments were returned. After a hearing on the application, the trial court issued the writ. The trial court then signed individual orders dismissing each of the eight indictments. The State appealed.

On appeal, appellees filed motions to dismiss alleging that the Court of Appeals was without jurisdiction to entertain the appeal. The Court of Appeals, disagreeing with appellees' position, found that the State was appealing from the orders of dismissal and entertained the merits of appeal adversely to appellees 791 S.W.2d 176. Appellees subsequently sought review from this Court which we granted only to determine the jurisdictional issues. We will affirm.

Article 44.01, V.A.C.C.P., provides, in pertinent part, that the State is entitled to appeal from a trial court's order in a criminal case if such "dismisses an indictment, information, or complaint or any portion of an indictment, information, or complaint." Recently, in *State v. Moreno*, 807 S.W.2d 327 (Tex.Cr.App.1991), we concluded that the State has the power to appeal from "*any* trial court order concerning an indictment or information, and the Court of Appeals has the jurisdiction to address the merits of the appeal from that order whenever the order effectively terminates the prosecution in favor of the defendant." 807 S.W.2d at 332 (emphasis added).[1]

Appellees do not argue that in the case before us, the prosecution against them has "terminated" but they insist that the Court of Appeals lacked jurisdiction for two reasons. First, appellees argue that the "appeal was taken by the State only from granting relief on the Writ of Habeas Corpus." Appellees' brief on the merits at

1. We observed in *Moreno* that the trial court "effectively terminates" the prosecution against the accused whenever the effect of its order forces any alteration of the indictment or information before the trial on the merits and the State is not willing to comply with that order.

p. 2. Second, appellees argue that since there was no "proper presentment" of the indictments, there were no valid indictments to be dismissed and thus the causes "do[ ] not fall within the spectrum of [A]rt[icle] 44.01." Id. at p. 3. We find no merit in either of these arguments.

■ Even if the trial court in these cases before us had failed to order "dismissal" of the indictments pending against appellees and had merely granted relief on the applications for writ of habeas corpus we would still find such to be appealable orders. As this Court observed in *Moreno*, "[t]he mere label attached either to the defendant's motion or to the trial court's order ruling on same cannot determine its appealability." 807 S.W.2d at 332. We hold that in the case before us the trial court's order granting the applications for writ of habeas corpus "effectively terminated" the proceedings and therefore it was an appealable order. Indeed, as pointed out by the Court of Appeals in their opinion, what occurred in the case before us is that, although they labeled their pleadings "Application for Writ of Habeas Corpus," appellees sought to "set aside" the indictments (using the terminology correct under the Code of Criminal Procedure) because such had not been properly returned by the grand jury. See Article 27.03(3), V.A.C.C.P.[2] The trial court granted this motion and foreclosed the State from proceeding. For all purposes, the criminal action against appellees had been terminated and the State could appeal from the orders granting this relief to appellees. See *Moreno*, 807 S.W.2d at 333 (holding that an appellate court, in order to determine its jurisdiction, must look to the effect of orders concerning an indictment or information, not what the trial court or the parties at trial have labeled such orders).

■ Appellees also argue that the State could not appeal from any order concerning the charging instruments in this case. Here, appellees argue that such instruments were not "valid" indictments because they were never "properly presented" to the grand jury. Appellees try to distinguish those situations where the trial court has dismissed a "case" from those situations where the trial court has dismissed an indictment—they argue that because there were never any valid indictments pending against them the judge's orders merely dismissed the cases (as opposed to dismissing the indictments) and such orders are not delineated as appealable under Article 44.01. We disagree with this analysis and will not allow such to preclude the Court of Appeals from exercising jurisdiction over the appeals in these cases.

Appellees' argument is contingent upon factual allegations—that being the indictments under consideration were not returned by a properly formed grand jury. If we were to accept these arguments, such would require the Courts of Appeals to review the entire record, determine the issues and come to some conclusion concerning whether they were dealing with a "true" indictment. This is unacceptable.

■ When any court undertakes to determine the scope of its jurisdiction, such should be readily apparent and not dependent upon questionable circumstances of each unique case. As the Supreme Court has observed:

"Clarity is to be desired in any statute, but in matters of jurisdiction it is especially important. Otherwise the courts and the parties must expend great energy, not on the merits of the dispute settlement, but on simply deciding whether a court has the power to hear a case...." *United States v. Sisson*, 399 U.S. 267, 308, 90 S.Ct. 2117 [2139], 26 L.Ed.2d 608 (1970) (footnotes omitted) (plurality opinion).[3]

**2.** Article 27.03(3), provides in part that "a motion to set aside an indictment" may be based upon the fact "[t]hat the grand jury was illegally impaneled; provided however, that in order to raise such question on motion to set aside the indictment, the defendant must show that he did not have an opportunity to challenge the array at the time the grand jury was impaneled".

**3.** The Court was concerned with an earlier version of the Criminal Appeals Act (18 U.S.C.

As such, we will not interpret Article 44.01 to require a preliminary determination of whether the instrument purporting to be an indictment in the case under consideration is in fact a true indictment returned by a duly organized grand jury before the appellate court is allowed to address the merits of any claim. Article 44.01 must be "liberally construed [so as] to achieve [its] purpose." V.T.C.A., Government Code, Section 312.006. As discussed above, the intent of the Legislature in enacting such Article was to allow for a state appeal from any trial court order terminating the criminal proceedings against a defendant. Here the trial court's order did just that—it precluded the State from proceeding against the defendants. The order was thus appealable and appellees could have the Court of Appeals address the merits of their "not properly presented to the Grand Jury" claim.

The judgment of the Court of Appeals is affirmed.

CLINTON, J., dissents.

§ 3731). The Court found the Act to be "a failure" because:

"... [n]ot only does the statute create uncertainty by its requirement that one analyze the nature of the decision of the District Court in order to determine whether it falls within the class of common-law distinctions for which an appeal is authorized, but it has also engendered confusion over the court to which an

appealable decision should be brought." 399 U.S. at 308.

Responding to the Supreme Court's criticisms, Congress, with the specific intent of broadening the government's appellate powers, disposed of the Act in 1971 and replaced it with another. See *Arizona v. Manypenny*, 451 U.S. 232, 247 n. 24, 101 S.Ct. 1657, 1667 n. 24, 68 L.Ed.2d 58 (1981).