IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1393-05 through PD-1409-05



 



THE STATE OF TEXAS, Appellant
 


v.



REBEKAH FAITH STANLEY, STEPHEN JAY ADAMS, DIANA RODRIGUEZ,
JOHN BERNARD WACHSMANN, MATTHEW AARON JUNTUNEN, VINCENT
TYREE CARPENTER, JAMES BYRON RODGERS, SETH PAUL BOUTIN,
RONALD EUGENE HOLMES, DOEL GENE GARCIA, BRENDA SUE TELLES,
BOYD LEON LEFTWICH, JOHN W. COLLIER, TERRY LYNN DOBBS,
DENNIS WAYNE BAGBY, THOMAS FRANKLIN UNGER, and KEVIN IRA
EBY, Appellees





ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW


FROM THE TENTH COURT OF APPEALS


MCLENNAN COUNTY





 Price, J., delivered the opinion of the Court in which Keller, P.J.,
Meyers, Keasler, Hervey and Holcomb, J. J., join. Womack and Johnson, J.J.,
concur in the result. Cochran, J., dissents. 


O P I N I O N



 These consolidated cases present the question whether the State may appeal an order
dismissing a prosecution on the grounds that it proceeds upon an unconstitutional ordinance
if the trial court delays its ruling until after both parties have submitted their evidence at the
trial on the merits, but before the issue of guilt or innocence has been resolved. We conclude
that the State may appeal such an order. We therefore reverse the judgment of the court of
appeals, which held that it lacked jurisdiction, and remand the cause to that court to address
the merits of the State's contentions on appeal.

THE FACTS AND PROCEDURAL POSTURE


The Facts


 The named appellee and sixteen co-defendants were gathered at the street entrance of
a Planned Parenthood clinic in Waco where abortions were performed, carrying signs and
issuing leaflets to women seeking the services of the clinic. The clinic happened to be
located across the street from a school. A few months previously, the city had promulgated
an ordinance prohibiting "street activity" in school zones, such "activity" including but not
limited to a "demonstration." Warned by the police that their efforts in front of the clinic
violated this ordinance, the appellees persisted, and were issued citations. The cases were
consolidated and tried to a municipal court, which convicted the appellees.

In the Trial Court


 In a consolidated trial de novo in the county court at law ("the trial court"), the
appellees filed a motion to dismiss the prosecution on the grounds that the ordinance was
unconstitutionally vague and overbroad, in violation of the First Amendment to the United
States Constitution. The trial court declined to make a ruling on the motion during a pre-trial
hearing, announcing at that time that "I will carry the motion along until we hear the trial on
the merits." The appellees objected, but the State expressed its willingness to proceed
without a ruling "until during or after the trial, itself, whatever you would like to do."

 Trial on the merits, before the court, began a month later, and lasted only a day. On
the morning of trial, the appellees filed a trial brief, reiterating their claim that the ordinance
was unconstitutional. The State called a half dozen police officials and officers to testify
about the circumstances of the issuance of the citations. The appellees cross-examined each
witness primarily about his or her interpretation of the ordinance. At the conclusion of the
State's case in chief, the appellees re-urged their motion to dismiss, but the trial court
overruled the motion "at this time." The appellees then proceeded to call three witnesses of
their own, whose testimony also focused primarily on the meaning and application of the
ordinance.

 During its final argument to the court, counsel for the appellees argued exclusively
that the ordinance was unconstitutional. Pointing out that even the officers issuing the
citations had been unable to agree on the meaning of the ordinance, appellees' counsel urged
the trial court to find it unconstitutionally vague. He also argued that the ordinance was so
broadly worded that police officers could arbitrarily enforce it in such a way as to infringe
upon the appellees' constitutional guarantees of free speech, and that it served no overriding
public interest. Counsel stated in conclusion that "we would rest on the submission in our
Motion to Dismiss, in conjunction with our trial brief," accusing the city of enacting "an
ordinance to shut down [the appellees'] First Amendment conduct under the pretense of
protecting the children." He never argued, however, that the appellees were not guilty of
conduct that fell under the ambit of the ordinance. The trial court announced that it would
"stand in recess while I consider this."

 After a brief recess, the trial court announced that it would grant the appellees' motion
to dismiss the complaints. Apparently signing a proposed order that the appellees had
attached to their motion to dismiss or trial brief, the trial court read the "operative" paragraph
of the order into the record, viz:

 "It is ORDERED ADJUDGED, AND DECREED by the Court that all
charges against the Defendant . . . are in all things dismissed, and the
Defendant and her sureties are in all things discharged from further liability." 
Signed this date by me.


The clerk's record contains just such a signed and dated order.

In the Court of Appeals


 The Tenth Court of Appeals dismissed the State's attempted appeal from this order
in a published opinion. (1) The court of appeals acknowledged that the State is authorized to
appeal an order dismissing a charging instrument under Article 44.01(a)(1) of the Code of
Criminal Procedure. (2) And indeed, it is clear under our case law that the State may appeal a
pre-trial order dismissing such a charging instrument on the grounds that the underlying
statute is unconstitutionally vague. (3) Nevertheless, purporting to rely upon our subsequent
opinion in State v. Moreno, (4) the court of appeals held that an order to dismiss the prosecution
as based upon an unconstitutional statute must occur before the trial on the merits even
commences, and thus jeopardy attaches, in order to be appealable by the State. (5)

 Chief Justice Gray dissented. He argued that the plain language of Article 44.01(a)(1)
allows the State to appeal the dismissal of a charging instrument without reference to the
particular stage of the proceedings at which the dismissal occurs. (6) In addition, Chief Justice
Gray pointed out that this Court held, in Moreno itself, that the legislative intent behind
Article 44.01 was to permit the State to appeal under any circumstances in which the Double
Jeopardy Clause of the Fifth Amendment would not prohibit a retrial should the State's
appeal prevail. Because the United States Supreme Court has held that it does not violate
double jeopardy for the State to retry a defendant after a mid-trial dismissal of charges on
grounds unrelated to factual guilt or innocence, Justice Gray reasoned, citing United States
v. Scott, (7) Article 44.01(a)(1) should be read to permit the State's appeal here. (8) Finally,
Justice Gray complained that the holding of the majority would allow trial courts to insulate
their rulings dismissing charging instruments from appellate review by simply delaying those
rulings until after jeopardy has attached, "a result most likely not intended by the
legislature." (9)

 We granted the State's petitions for discretionary review in order to resolve this
substantial dispute among the members of the court of appeals and to decide whether the
majority may have misconstrued Article 44.01(a)(1), or our prior precedent construing it. (10) 
The issue presented is: Can the State appeal an order dismissing a charging instrument when
that order is granted, not pre-trial, but only after the evidence is closed and the case has been
submitted to the fact-finder (here, the trial court) for deliberations on the issue of guilt or
innocence? We hold that it can.

ANALYSIS


 Article 44.01(a)(1) authorizes the State to appeal any order of the trial court that
"dismisses an indictment, information, or complaint or any portion of an indictment,
information, or complaint[.]" In Moreno we concluded that this provision entitles the State
to appeal any order, short of an acquittal, which has the effect of terminating the prosecution,
regardless of how the trial court characterizes its order. In summing up, we held "that the
trial court 'effectively terminates' the prosecution against the accused whenever the effect
of its order forces any alteration of the indictment or information before the trial on the
merits and the State is not willing to comply with that order." (11)

 Moreno involved a motion to quash an information for lack of sufficient factual
particularity, which the trial court granted pre-trial. In summarizing that a pre-trial order to
quash on this basis constitutes a termination of the proceedings, so long as the State "is not
willing" to supply the missing notice, and is therefore appealable, we were simply limiting
our holding to the particular facts before us in that case. We did not necessarily intend
thereby to limit the scope of Article 44.01(a)(1) only to orders effectively terminating
prosecutions that are actually granted prior to trial or to the attachment of jeopardy, as the
court of appeals panel believed. On the contrary, we agree with Chief Justice Gray that the
plain language of Article 44.01(a)(1) contains no such temporal limitation. On its face it
authorizes the State to appeal any order that has the effect of terminating the prosecution,
without regard to when the order is granted during the course of the proceedings.

 We also reject the implicit assumption of the court of appeals majority that, in order
to be appealable, an order dismissing must come before the attachment of jeopardy. (12) In
Moreno we observed that, in enacting Article 44.01, the Texas Legislature intended "to
extend to the State appellate powers akin to those that the United States Congress had
extended to the federal government in a criminal case." (13) We also observed that, under
current federal law, the federal government is empowered to appeal any adverse ruling for
which an appeal is not "barred by the Constitution." (14)

 Not every order dismissing a prosecution after jeopardy has attached will result in a
double jeopardy bar to re-prosecution. In United States v. Scott, the trial court waited until
all of the evidence had been submitted at trial before granting a motion to dismiss two counts
of the indictment, on the basis of prejudicial pre-indictment delay, that had been filed and
urged pre-trial. The Supreme Court held that the Government could appeal under these
circumstances, concluding that "[n]o interest protected by the Double Jeopardy Clause is
invaded when the Government is allowed to appeal and seek reversal of such a midtrial
termination of the proceedings in a manner favorable to the defendant[,]" at least so long as
the defendant himself sought the termination, and it occurred "without any submission to
either judge or jury as to his guilt or innocence[.]" (15) Given these precedents, we agree with
Chief Justice Gray that an order dismissing the prosecution need not occur prior to the
attachment of jeopardy before the State can appeal it under Article 44.01(a)(1).

 In the instant case, however, the trial judge did not rule on the appellees' motion to
dismiss the complaints until after he announced that he would "stand in recess while I
consider this." Thus it appears that he may have taken up the question of the constitutional
validity of the ordinance at the same time that he was considering the issue of the guilt or
innocence of the appellees. Can it be said under these circumstances that the proceedings
were terminated "without any submission to either judge or jury as to his guilt or
innocence"? (16) And if not, does it make a difference to the jeopardy determination?

 We think it clear enough that the trial judge's consideration of the guilt or innocence
of the appellees was contingent upon his first ruling upon the constitutional validity of the
ordinance. In essence, having ruled in the appellees' favor on that issue, he never reached
the contingent issue of their guilt or innocence. The gravamen of the Supreme Court's
holding in Scott is that double jeopardy does not bar a retrial, and hence a government appeal,
whenever it is the defendant who seeks a dismissal of his prosecution on any legal basis
unrelated to his guilt or innocence. (17) The appellees continued to press their claim that the
ordinance was unconstitutional right up until the time the trial judge recessed to consider the
evidence he had heard. And indeed, the only contested issue at trial, and the sole subject of
counsel's final summation to the court, had nothing to do with the guilt or innocence of the
appellees, and everything to do with the constitutionality of the ordinance under which they
were charged. It should make no difference to the jeopardy analysis that the trial judge had
taken the issue of the guilt or innocence of the appellees "under submission," in the sense
that, had he denied their motion to dismiss, he would have continued deliberating to decide
whether the State had convinced him of their guilt beyond a reasonable doubt. As long as
he resolved the motion to dismiss adversely to the State without ultimately addressing the
issue of guilt or innocence, there is no double jeopardy impediment to the State's appeal.

 The appellees insist, however, that the trial court's order actually amounted to an order
of acquittal. As we recognized in Moreno, an order that terminates a prosecution in an
acquittal prior to a jury verdict has definite and inescapable jeopardy consequences, and thus
"cannot be reviewed [on appeal] regardless of how egregiously wrong the verdict may be." (18) 
Thus, if the order that the trial court entered in this cause constituted an acquittal, even if
erroneously, then the State may not appeal it. As the appellees point out, the language that
the trial court utilized in dismissing the complaints sounds like the language of an acquittal. 
The trial court did not simply dismiss the complaints. It also purported to "discharge[ ]" the
appellees "from further liability." This language is identical to that of at least one provision
of the Code of Criminal Procedure describing the effect of a judgment of acquittal. (19)

 Nevertheless, we do not construe the trial court's order to be a judgment of acquittal. 
In determining whether certain orders will interpose a federal jeopardy bar, the Supreme
Court has declared that "the trial judge's characterization of his action does not control the
classification of the action." (20) Instead, the Supreme Court has prescribed and "consistently
used" a definition of "acquittal" that the trial court's order in this case does not satisfy. (21) 
According to that definition, "a defendant is acquitted only when 'the ruling of the judge,
whatever its label, actually represents a resolution [in the defendant's favor], correct or not,
of some or all of the factual elements of the offense charged.'" (22) This Court has similarly
observed, in Ex parte George, (23) that while no statutory provision explicitly defines the word
"acquittal," "the context in which it appears throughout the Code of Criminal Procedure
creates a powerful inference that it means a finding of fact that the accused is not guilty of
the criminal offense with which he is charged."

 Here, the trial court's order did not purport to resolve any of the factual elements of
the offense the appellees were alleged to have committed. It is true that in signing the order
that was apparently prepared by the appellees and attached to their motion to dismiss, the trial
court endorsed language ("discharged from further liability") that would be appropriate to
an order of acquittal. But nowhere does the order recite that the appellees have been found
not guilty, that the State's evidence did not meet the standard of proof beyond a reasonable
doubt, or that the State's proof as to any specific factual element necessary to conviction was
lacking. Nor do we think the trial court would likely have signed such an order when its
obvious intention was to grant the motion to dismiss the charges, just as counsel for the
appellees urged it to do in his final summation, rather than to rule on the ultimate issue of
their guilt or innocence. In our view, the trial court did not erroneously make a finding that
the appellees were not guilty of violating the ordinance. He made no finding with respect
to that issue, and therefore his order cannot stand as a jeopardy bar to the State's ability to
appeal from it under Article 44.01(a)(1).

CONCLUSION


 We hold that the court of appeals erred to conclude that the State was not authorized
under Article 44.01(a)(1) to appeal the trial court's order in these causes. The judgment of
the court of appeals dismissing the State's appeal is reversed. The cause is remanded to that
court to address the merits of the State's contentions.

Delivered: September 20, 2006

Publish
1. State v. Stanley, 171 S.W.3d 516 (Ct. App. - Waco 2005).
2. Tex. Code Crim. Proc. art. 44.01(a)(1).
3. State v. Eaves, 800 S.W.2d 220, at 224 (Tex. Crim. App. 1990).
4. State v. Moreno, 807 S.W.2d 327, at 334 (Tex. Crim. App. 1991).
5. 171 S.W.3d at 517.
6. Ibid.
7. 437 U.S. 82 (1978).
8. 171 S.W.3d at 517.
9. Ibid., citing 43A George E. Dix & Robert O. Dawson, Texas Practice: Criminal
Practice and Procedure § 43.198 (2d ed. 2001).
10. See Tex. R. App. Proc. 66.3 (e) & (d), respectively.
11. 807 S.W.2d at 334 (emphasis supplied).
12. It is clear that jeopardy had attached as of the time of the trial court's eventual ruling on the
appellee's motion to dismiss. State v. Torres, 805 S.W.2d 418 (Tex. Crim. App. 1991).
13. 807 S.W.2d at 329. See also State v. Morgan, 160 S.W.3d 1, at 3 (Tex. Crim. App. 2004).
14. Id., at 332, quoting United States v. Wilson, 420 U.S. 332, at 237-239 (1975).
15. 437 U.S. at 100, 101.
16. Id., at 101.
17. Id., at 96.
18. 807 S.W.2d 327, at 332, n. 6. See also Smith v. Massachusetts, 125 S.Ct. 1129, at 1134
(2005) (if, after judgment of acquittal, further proceedings would be necessary for state to acquire
a conviction, double jeopardy prohibits any and all "postacquittal factfinding proceedings."); State
v. Savage, 933 S.W.2d 497, at 500 (Tex. Crim. App. 1996).
19. Tex. Code Crim. Proc. art. 37.12 ("On each verdict of acquittal or conviction, the proper
judgment shall be entered immediately. If acquitted, the defendant shall at once be discharged from
all further liability upon the charge for which he was tried[.]" (emphasis supplied)).
20. United States v. Scott, supra, at 96.
21. Smith v. Massachusetts, supra, at 1134.
22. United States v. Scott, supra, at 97, quoting United States v. Martin Linen Supply Co., 430
U.S. 564, at 571 (1977); see also Smith v. Massachusetts, supra, at 1134.
23. 913 S.W.2d 523, at 527 (Tex. Crim. App. 1995).