# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-24-00536-CR

---

**The State of Texas, Appellant**

**v.**

**Robert Chody, Appellee**

---

**FROM THE 299TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-DC-24-904060, THE HONORABLE KAREN SAGE, JUDGE PRESIDING**

---

## O R D E R   A N D   O P I N I O N

**PER CURIAM**

The State of Texas appeals from the trial court's oral ruling in limine, which the State asserts "constructively quashed a large portion of the indictment and effectively terminated the State's case in chief."

In its indictment, the State alleges in relevant part that Robert Chody and his co-defendant, Jason Nassour, tampered or conspired to tamper with evidence by intentionally and knowingly releasing video evidence to the Big Fish Enterprise cameramen who shot the videos, knowing that they depicted an in-custody death and intending to impair their availability in a pending death investigation.[1]   *See* Tex. Penal Code §§ 15.02(a) (defining criminal

---

[1]   That evidence was to be destroyed pursuant to a contract between the Williamson County Sheriff's Office and Big Fish Entertainment, which produced the TV show "Live PD."

conspiracy), 37.09(a)(1) (providing that person tampers with evidence if, knowing that investigation or official proceeding is pending or in progress, he "alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding").  The trial court signed a written order in limine prohibiting the State from presenting evidence supporting an inference, as well as arguing or suggesting at trial, that Chody and Nassour possessed the "legal right or ability" to refuse to return the videos.  As recognized by both the trial court and Chody, the order was based on the theory that the federal Privacy Protection Act (PPA), 42 U.S.C. §§ 2000aa–2000aa-12, which prevents government seizure of "work product materials" and "documentary materials" intended for publication, required Chody and Nassour to surrender the videos to Big Fish and preempted any conflicting state law.  *See Sabine Consol., Inc. v. State*, 806 S.W.2d 553, 556 (Tex. Crim. App. 1991) ("The doctrine of preemption is based upon the supremacy clause of the United States Constitution, Article VI, cl. 2, which invalidates state laws that 'interfere with, or are contrary to,' federal law. (quoting *Gibbons v. Ogden*, 22 U.S. 1, 82 (1824))).

We dismissed the State's pretrial appeal from the written order in limine for want of jurisdiction and rejected its argument that the order constituted a dismissal of the indictment or suppression order.  *See State v. Chody*, No. 03-23-00080-CR, 2023 WL 3512601, at \*5 (Tex. App.—Austin May 18, 2023, pet. ref'd) (mem. op., not designated for publication).  We explained that the order merely "directed the State to approach the bench to seek a definitive ruling before presenting evidence or discussing the topics covered by the motion in limine and informed the State that it may ask the trial court to reconsider its ruling." *Id.* at \*4.

The State argues that circumstances have now changed:  the cause was reindicted, a jury was sworn, jeopardy attached, and the State began presenting evidence as part of its

2

case-in-chief. According to the State's brief, "[o]nly after the jury was seated and jeopardy attached did [the trial court] rule that testimony showing the indictment's tampering allegations would be wholesale excluded—allegedly based on a lack of 'relevance'—because the application of the PPA meant that Appellees had done nothing wrong." The State contends that although the trial court characterized its oral ruling as a ruling in limine, the court has effectively quashed a portion of the indictment and precluded the State from prosecuting its case.

This appeal followed, and, on the State's motion, the trial court granted a stay of the underlying proceedings pending the appeal's disposition. *See* Tex Code Crim. Proc. art. 44.01(e).

## I.      Characterization of Trial Court's Ruling

Article 44.01(a)(1) of the Texas Code of Criminal Procedure authorizes the State to appeal an order that "dismisses an indictment, information, or complaint or any portion of an indictment, information, or complaint." *Id.* art. 44.01(a)(1). The article must be liberally construed in favor of State's appeals and so as to achieve its purpose of providing prosecutors with "the same broad powers afforded the federal government." *State v. Chupik*, 343 S.W.3d 144, 146 (Tex. Crim. App. 2011); *see State v. Moreno*, 807 S.W.2d 327, 333 (Tex. Crim. App. 1991); Tex. Gov't Code § 312.006.

The Texas Court of Criminal Appeals has held that the article means that "the State has the power to appeal from any trial court order concerning an indictment or information (and the Court of Appeals has the jurisdiction to address the merits of the appeal from that order) whenever the order effectively terminates the prosecution in favor of the defendant." *Moreno*, 807 S.W.2d at 332; *State v. Rosseau*, 398 S.W.3d 769, 774 (Tex. App.—San Antonio 2011),

3

*aff'd*, 396 S.W.3d 550 (Tex. Crim. App. 2013) ("[T]he State may appeal any order, short of an acquittal, which has the effect of terminating the prosecution, regardless of how the order is labeled or characterized."). A trial court "effectively terminates" a prosecution

> whenever the effect of its order forces any alteration of the indictment or information before the trial on the merits and the State is not willing to comply with that order. The fact that the State has appealed the decision of the trial court should be sufficient indication to the Court of Appeals that the State is unwilling to alter the indictment or information and that for all practical purposes, the prosecution in the trial court has "terminated."

*Moreno*, 807 S.W.2d at 332. The fact that the State could amend the charging instrument is irrelevant; "the State is entitled to stand on its charging instrument and appeal a trial court's adverse ruling dismissing the same, even if amendment is possible." *State v. Plambeck*, 182 S.W.3d 365, 370 (Tex. Crim. App. 2005); *see Moreno*, 807 S.W.2d at 333.

In determining whether we have jurisdiction, we must look to the order's effect, not its label or the nature of the proceeding. *See State v. Garcia*, 638 S.W.3d 679, 681 (Tex. Crim. App. 2022); *Moreno*, 807 S.W.2d at 333. The Court of Criminal Appeals' decision in *Moreno* is instructive:

> The trial court granted this motion and effectively foreclosed the State from proceeding with the information under which it wished to proceed and thus foreclosed the State from proceeding under its theory of prosecution. The fact that the trial court marked through language in the order that would have "dismissed" the charges against Moreno is superfluous; for all intents and purposes, the trial court's actions forced the State to alter its pleadings—either by re-indicting or amending the original—before it would be allowed to try Moreno. The State's refusal to amend effectively terminated the criminal proceedings. To say that the action against Moreno was not "dismissed" merely because the trial court did not employ that or similar language is to exalt form over substance.

*Moreno*, 807 S.W.2d at 333 n.7.

4

Although *Moreno* involved a pretrial order, the Court has since extended its holding to "*any* order that has the effect of terminating the prosecution, without regard to when the order is granted during the course of the proceedings," including orders granted after jeopardy attaches. *State v. Stanley*, 201 S.W.3d 754, 758 (Tex. Crim. App. 2006) (addressing pretrial motion to dismiss granted by trial court after close of evidence). As long as the trial court does not "ultimately address[] the issue of guilt or innocence, there is no double jeopardy impediment to the State's appeal." *Id.* at 759.

The record in this case contains apparently conflicting statements from the trial court regarding the nature and scope of its oral ruling. After the jury was sworn, the court denied defense counsel's request to strike certain overt acts from the indictment and described the existing written order in limine in contingent terms:

> THE COURT: I have made a ruling on a motion in limine that relates to two, possibly four of those overt acts, okay. And I have suggested that there may be evidence that would mean that the PPA was not properly being followed here in the way the PPA should, that there was some – some other act that, like, was deliberately, intentionally at the time violating the PPA that – that the State would be producing with its witnesses.
>
> . . . .
>
> So I am – I am not stopping you from proving any of your overt acts, but I am – I have ruled that until we have evidence that the PPA doesn't apply or there is some additional evidence that says how it was violated or how it – it's moot.

However, the court later retreated from the conditional nature of its ruling, informing the State, "I'm just not going to go back and reverse my ruling on the preemption issue. I'm asking you how we go forward."

The court's statements from the second and third days of trial likewise support the conclusion that its ruling eventually came to exceed the bounds of a ruling in limine. *See Geuder*

5

*v. State*, 115 S.W.3d 11, 15 (Tex. Crim. App. 2003) (explaining that motion in limine is, "by its nature, subject to reconsideration by the court throughout the course of the trial . . . because it may not be enforced to exclude properly admissible evidence"); *Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd) (noting that "[a] ruling on a motion in limine does not purport to be one on the merits but one regarding the administration of the trial" and "motions in limine do not preserve error").  Although at times the court stated that its ruling was still a ruling in limine, that it was not final and was subject to reconsideration, and that the parties could approach to discuss the admissibility of testimony, the court emphasized the finality of its ruling with respect to preemption, the exclusion of evidence that Chody and Nassour independently decided to return the video evidence, and the invalidity of the State's theory of prosecution:

> THE COURT: [A]ny questions about who made the decision—because what's clear from this witness is the one thing that nobody had the right to do, was to keep those cameras in the car, and that's what the PPA is all about.  So if that's the case – and this is where my ruling is – then who gave the order to give them back is not relevant because somebody had to give the order to give them back.
>
> . . . .
>
> THE COURT: [I]f [the State] start[s] implying that these two people ordered them to give the cameras back and that was wrong, then we're going to get into, you know, having to talk about the PPA, and I've already made a ruling about the PPA.
>
> . . . .
>
> THE STATE: Now, we plan to use that to show inference, that that call, that that decision to return that stuff came from Chody and Nassour.
>
> THE COURT: Yes.  And that is what I have ruled that you cannot do.  Let me make it crystal clear.  My ruling indicates that under federal law, Chody and Nassour had no other alternative than to give the cameras back at that time.  So any inference that them doing that is not relevant because there was nothing else they could do under federal law.  You know, the cameras belong to Big Fish.  That is exactly what I am saying is not admissible under my ruling.

THE STATE: Judge, that ruling is based on the PPA and your interpretation of the PPA, that's where that comes from, correct?

THE COURT: Yes.

. . . .

THE COURT: What I have said over and over again is that the action of letting the cameramen have their cameras back was required by the PPA. It's not saying that federal law preempts state law. It's not saying anything other than I'm making a ruling with respect to certain evidence of when the cameras were handed back, saying that was the only option for those – for anybody to do at that time, is to get the cameras back because the PPA required it.

The PPA doesn't preempt your prosecution at all. And there are many elements of your indictment that have nothing to do with the PPA, and we've heard evidence on that already. So please, this Court has never once thought, held, believed, or ruled that your prosecution is unconstitutional or that your prosecution itself is preempted by the PPA.

In sum, the court's statements indicate that its ruling was final concerning the preemptive effect of the PPA and the inadmissibility of evidence that Chody and Nassour made the decision to surrender the videos—one of the State's theories of prosecution. Further, we must look to the effect of the court's ruling, *see Garcia*, 638 S.W.3d at 681; *Moreno*, 807 S.W.2d at 332–333, which, however characterized, effectively prohibited the State from discussing or eliciting testimony about conduct that formed the basis for overt acts alleged in the indictment and from proceeding with its chosen theory of prosecution, *see Moreno*, 807 S.W.2d at 333 n.7. Whether the State could have pursued a different theory or overt acts is beside the point. The State has the right to stand on its indictment and appeal any dismissal resulting from a refusal to amend. *Ex parte Perry*, 483 S.W.3d 884, 916 (Tex. Crim. App. 2016).

For these reasons and liberally construing article 44.01(a)(1), we conclude that the trial court's oral trial ruling effectively terminated the State's prosecution and that the State has

the right to appeal the ruling. *See* Tex. Code Crim. Proc. art. 44.01(a)(1); *Chupik*, 343 S.W.3d at 146; *Moreno*, 807 S.W.2d at 332.

## II.    Abatement for Entry of Signed Written Order

Although the State has the right to appeal the trial court's ruling, the court has not entered a signed and written order memorializing its ruling. A written and signed appealable order is a prerequisite to invoking this Court's appellate jurisdiction. *Dewalt v. State*, 417 S.W.3d 678, 685 n.32 (Tex. App.—Austin 2013, pet. ref'd) (citing Tex. R. App. P. 26.2(a)(1); *State v. Rosenbaum*, 818 S.W.2d 398, 402 (Tex. Crim. App. 1991) ("[T]he term 'entered by the court' encompasses the signing of an order by the trial judge.")). An oral ruling is not "an order" for the purposes of establishing the decision of the trial court, "[o]nly a writing suffices." *State v. Sanavongxay*, 407 S.W.3d 252, 258 (Tex. Crim. App. 2012). Precedent requires that an order be in writing for the State to appeal, and a trial court's refusal or failure to enter a written order may stymie the State's ability to appeal a pretrial ruling. *See id.* at 258–59 (holding that, "because there [wa]s no written order from which to appeal, the court of appeals correctly held that it ha[d] no jurisdiction over the state's appeal").

Such a defect is, however, curable—in a case in which there has been an oral trial court ruling but no written order has been entered, we may treat the notice of appeal as prematurely filed, abate the appeal, and remand the case to the trial court for preparation of an appealable order. *Dewalt*, 417 S.W.3d at 685 n.32 (citing Tex. R. App. P. 27.1(b); *Ex parte Crenshaw*, 25 S.W.3d 761, 764 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (holding that Rule 27.1(b) applies to appeals by State); *State v. Rollins*, 4 S.W.3d 453, 454 & n.1 (Tex. App.—Austin 1999, no pet.) (concluding that where State filed notice of appeal from order dismissing

indictment before order was signed, notice became effective upon signing of order)); *see also* Tex. R. App. P. 44.4(b) (requiring appellate court to direct trial court to correct remediable error that prevents proper presentation of appeal). This is especially true in cases such as this, as the Court of Criminal Appeals has advised that when "[f]aced with a conflicting record concerning [our] jurisdiction," we should "abate[] to clarify which action was intended by the trial court." *Taylor v. State*, 247 S.W.3d 223, 224 (Tex. Crim. App. 2008) (addressing conflict between trial court's signed, written order granting motion for new trial and its certification of case for appeal). Moreover, we must not dismiss an appeal but rather must direct the trial court to correct an error if (1) the trial court's erroneous action or failure or refusal to act prevents the proper presentation of a case to the court of appeals, and (2) the trial court can correct its action or failure to act. *See Henery v. State*, 364 S.W.3d 915, 918 (Tex. Crim. App. 2012) (addressing conflict between trial court's oral denial of motion to quash and its written order granting same motion that was apparently "signed as the result of a clerical error"); Tex. R. App. P. 44.4.

Accordingly, we abate this appeal and remand the cause to the trial court for entry of a signed and written order memorializing its oral ruling, including any effect of the PPA on the State's prosecution of Chody in the underlying cause. *See State v. Navarrao*, No. 03-23-00637-CR, 2023 WL 8004882, at *1 (Tex. App.—Austin Nov. 17, 2023, no pet.) (order & mem. op., not designated for publication) (per curiam) (abating for entry of signed order on motion for new trial); *State v. Castillo*, No. 07-22-00195-CR, 2023 WL 3319935, at *1 (Tex. App.—Amarillo May 9, 2023, no pet.) (order, not designated for publication) (per curiam) (remanding cause for entry of signed order on defendant's motion to dismiss indictment); *Ex parte Crenshaw*, 25 S.W.3d at 764 (abating case "to allow the trial court to sign a written order reflecting its oral decision"). A supplemental clerk's record containing the signed order

9

shall be prepared and filed with this Court no later than January 17, 2025. *See* Tex. R. App. P.

34.5(c)(1), 44.4.[2]

It is ordered on December 31, 2024.

Before Chief Justice Byrne, Justices Kelly and Theofanis

Abated and Remanded

Filed:  December 31, 2024

Publish

---

[2] Chody's motion to dismiss the State's appeal is dismissed as moot.